81 N.J. Super. 350 (1963)
195 A.2d 635
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOSEPH ASHBY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 16, 1963.
Decided November 29, 1963.
*352 Before Judges GOLDMANN, KILKENNY and COLLESTER.
Mr. G. Henry Weston argued the cause for appellant (Messrs. Weston & Kravitz, attorneys; Mr. Ronald A. Berman, on the brief).
Mr. Martin J. Queenan, County Prosecutor, argued the cause for respondent.
The opinion of the court was delivered by COLLESTER, J.A.D.
This is an appeal by defendant, pursuant to leave granted by this court, from an interlocutory order of the Superior Court, Law Division, Burlington County, denying his motion to require the Prosecutor of Burlington County to nolle prosequi five indictments pending against him or, in the alternative, to dismiss said indictments. The relevant facts concerning this unusual situation are not in dispute.
The grand jury of Burlington County returned five indictments, each charging defendant with the crime of open lewdness, *353 in violation of N.J.S. 2A:115-1. In each instance the offense charged indecent exposure in the presence of named females. The dates and places where the incidents allegedly took place are: April 10, 1962 in the Township of Burlington, May 18, 1962 in the Township of Edgewater Park, and March 5, April 10 and May 16, 1962 in the Township of Levittown.
In June 1962 defense counsel sent defendant to Dr. Ivan F. Bird of Trenton for a psychiatric examination. On July 11, 1962 Dr. Bird gave his report to defense counsel stating that in his opinion defendant was not mentally ill but was undergoing a neurosis with compulsive behavior. He recommended psychiatric treatment and reported that defendant was willing to accept the same.
On July 17, 1962 David Kravitz, one of defendant's counsel, communicated with the prosecutor in an attempt to ascertain whether defendant could plead in the respective municipal courts to the lesser charge of being a disorderly person and have the criminal indictments nolle prosequied. The prosecutor suggested that counsel confer with him on July 19 when defendant was to plead to the indictments in the Superior Court. On the same day Mr. Kravitz telephoned County Judge McGann and solicited his aid in the matter. It is Judge McGann's recollection that Mr. Kravitz mentioned but one incident involving defendant and not five, and that he suggested Mr. Kravitz should take the matter up with the assignment judge.
On July 19, 1962 defendant was arraigned on the five indictments and entered pleas of not guilty. On July 23 or 24 Mr. Kravitz conferred with the prosecutor and exhibited Dr. Bird's report. He informed the prosecutor that defendant was married and the father of three children; that if he pleaded guilty or was found guilty of the criminal charges he would lose his security clearance with his employer. He requested that the charges be disposed of by pleas of guilty in the several municipal courts under the Disorderly Persons Act and that the indictments be nolle prosequied. The prosecutor *354 advised him that from previous conferences with Judge W. Orvyl Schalick, the assignment judge, he knew that the judge would not grant an order to nolle prosequi such indictments. Mr. Kravitz told the prosecutor that he would confer with Judge Schalick personally.
On July 25, 1962 Mr. Kravitz endeavored to reach Judge Schalick at his chambers in Camden. He was advised that the judge was on vacation and that Judge Wick was the acting assignment judge. He spoke to Judge Wick about the matter over the telephone and pursuant to the judge's suggestion forwarded a letter and enclosed a copy of Dr. Bird's report. In his letter he advised Judge Wick, in part,
"On the basis of the economic harm which will come to Mr. Ashby and his family and on the basis of the favorable recommendations of Dr. Bird, the Prosecutor's staff, the Chief of County Detectives and Judge McGann with whom I spoke, all have agreed that with proper psychiatric treatment Mr. Ashby could make a complete and satisfactory rehabilitation and on that basis all are willing to allow the indictments on the criminal charges, as such, to be `nolle prosed' and allow Mr. Ashby to plead to a lesser charge of being a disorderly person. This attitude also stems from the fact that no children were involved and that no force or touching occurred. In this event there would be no interference with Mr. Ashby's security clearance at the RCA Laboratories where he is employed.
I have been advised that in order for this procedure to occur, it is necessary for you or Judge Schalick to give your permission.
Therefore, I respectfully request that you give serious consideration to my plea on behalf of Mr. Ashby."
On July 27 Judge Wick wrote Judge McGann. He stated he understood that defendant had been charged with five counts of open lewdness and that he was accepting psychiatric treatment from Dr. Bird and would continue to do so until the doctor decided that he had been sufficiently rehabilitated. The letter then contained the following statement:
"This is to advise that acting in the stead of Judge Schalick as the Assignment Judge you have my permission to dispose of these incidents on charge of being a disorderly person and under such other conditions as you deem advisable. This consent would permit the indictments to be `nolle prosed.'"
*355 Judge McGann made the following notation on the letter:
"Acknowledge and tell J. Wick we shall be guided accordingly. Tell him also we think the Prosecutor should be notified and consent to the request."
The letter with said notation was then delivered to the prosecutor, who thereupon caused notice to be given to the municipal magistrates that complaints would be made against defendant under the Disorderly Persons Act in their respective courts. Defense counsel were notified they would be advised by the magistrates of the dates of the hearings on said complaints.
On August 28, 1962 defendant appeared before the municipal courts of Edgewater Park and Burlington Township and pleaded guilty in each municipality to a complaint charging him with violation of N.J.S. 2A:170-5 as a disorderly person. On each complaint he was fined $100.
Defense counsel had been advised to produce defendant before the municipal court of Levittown on Friday, August 31, to plead to the three remaining charges as a disorderly person. However, prior to said date the Levittown magistrate communicated with defense counsel and stated that the prosecutor had postponed the hearing on these charges.
Defendant's attorneys conferred with the prosecutor. He informed them that Judge Schalick had returned from his vacation and, upon being advised of the procedures being followed, had said he would not permit the indictments to be nolle prosequied. Accordingly, the prosecutor would not move for the same.
Defendant then moved before Judge McGann, sitting in the Superior Court, to nolle prosequi or dismiss the criminal indictments. The judge denied the motion on the ground that he had no authority to dismiss said indictments; that under the rules of court motions to nolle prosequi indictments must be made only to the assignment judge. This ruling is the subject of the present appeal.

*356 1.
We will consider first the disposition of the indictments charging the crimes of open lewdness in the Townships of Burlington and Edgewater Park where defendant has pleaded guilty and been fined on complaints for violation of N.J.S. 2A:170-5. This statute provides that any person who by word, act or sign invites or solicits unlawful sexual intercourse or any other unlawful, indecent, lewd or lascivious act, is a disorderly person.
Where one offense is an ingredient or integral part of another offense, or when the evidence necessary to secure a conviction of the second offense was an essential part of the proof used to obtain a conviction of the first offense, conviction on one charge bars another. State v. Dixon, 40 N.J. 180, 184 (1963); State v. Mark, 23 N.J. 162 (1957); State v. Labato, 7 N.J. 137 (1951). Here the evidence necessary to secure a conviction under the two indictments charging the crimes of open lewdness in said townships was an essential part of the proof upon which the disorderly person complaints were founded in the municipal courts.
Under our former practice, the defense of double jeopardy, raised by defendant in the instant case, had to be asserted by a written plea of autrefois convict. This requirement has been eliminated and the practice of disposing of such an issue by a motion before trial is substituted. State v. Mark, supra, 23 N.J., at page 167; State v. Boening, 63 N.J. Super. 588 (App. Div. 1960). See also R.R. 3:5-5.
The county judge assigned to preside in the trial of criminal actions has the power and authority to pass upon such motions. Defendant made such a motion with respect to the two said indictments. The prosecutor at oral argument of this appeal conceded that such relief should be granted. We are satisfied that these two indictments should be dismissed.

*357 2.
We come now to the three remaining indictments charging defendant with the crimes of open lewdness in the Township of Levittown.
Defendant contends that Judge McGann erred when he refused to grant the motion to dismiss these indictments or to order the prosecutor to nolle prosequi these indictments on the ground that he had no authority to do so. He urges that the proper procedure to enforce an agreement to downgrade offenses and to nolle prosequi indictments is by a motion before the court having jurisdiction over the indictments. It is conceded that Judge McGann had been assigned to preside over the trial of criminal causes.
We will pass for the moment the question of whether such an alleged agreement existed, and the validity thereof, to consider the procedural aspects involved.
The nolle prosequi was a device used at common law to terminate a criminal prosecution which the government intended to abandon. "Nolle prosequi" means literally "to be unwilling to prosecute." Anciently the attorney general, alone and without judicial interference, ended a criminal prosecution by openly announcing to the court that the government would no longer prosecute the indictment.
In New Jersey the power to enter a nolle prosequi is reposed exclusively in the attorney general or the county prosecutors, but it cannot be exercised without the consent of the court. State v. Hickling, 45 N.J.L. 152 (Sup. Ct. 1883). Our practice places joint responsibility for the proper use of the power to terminate a criminal prosecution on the prosecutor who determines upon that course and on the judge who approves it. However, the courts of our State have no power to direct the prosecutor to move a nolle prosequi of an indictment.
When our court rules were first adopted R.R. 2:12-4 (now R.R. 3:11-3) provided that upon the motion of the prosecuting attorney, the court may order a nolle prosequi of *358 an indictment. In 1953 the rule was amended to substitute the word "dismissal" for the common law expression "nolle prosequi." This was a mere change in form and not one of substance. In effect, it is a motion by the prosecutor to dismiss the indictment because he no longer intends to prosecute the same. The pertinent language thereof states:
"Upon the motion of the prosecuting attorney, an indictment or accusation, or any count thereof, may be ordered dismissed prior to trial only (1) by the Assignment Judge or (2) by a judge to whom the same has been assigned for disposition, provided that such judge has previously sentenced the same defendant on one or more counts of the same or another indictment or accusation." (Emphasis added)
The rule as amended thus provides that such a motion to dismiss, viz., to "nolle prosequi" the indictment, can be made only by the prosecutor and an order directing such dismissal can be entered only by the assignment judge. Judge McGann was correct in ruling that he had no authority to order the prosecutor to nolle prosequi the indictments.

3.
At the oral argument we were advised that Judge Schalick and Judge Wick have indicated informally that neither would order a nolle prosequi or a dismissal of these indictments if the prosecutor were to make such a motion. The merits of the issues raised in this appeal are such that we believe they should be disposed of, and therefore pursuant to R.R. 1:5-4 and R.R. 2:5 we shall exercise our original jurisdiction for a complete determination of the matter.
R.R. 3:5-5(b)(1) provides that any defense or objection which is capable of determination without the trial of the general issue may be raised before trial by motion. Subsection (b)(2) of the rule requires that "defenses and objections based on defects in the institution of the prosecution" must be raised by motion before trial, and that failure so to raise any such objection or defense then available constitutes *359 a waiver thereof. Cf. State v. Hubbs, 70 N.J. Super. 322, 327 (App. Div. 1961).
Defendant seeks to enforce an agreement which he alleges was made with the prosecutor. If the agreement is valid and enforceable, it can be raised in bar of the prosecution of the indictments under this rule.
Defendant contends that the agreement made by the State to nolle prosequi the indictments upon which he relied in good faith should be enforced. He asserts that the repudiation of the agreement by the State violates the fundamental concepts of fair play and will result in irreparable prejudice to him. He further alleges that the delay in permitting him to fulfill his part of the agreement by pleading to the three remaining charges under the Disorderly Persons Act has so prejudiced him that he should be excused from further performance by the court.
Let us review the details of the alleged agreement. It must be noted that all overtures to downgrade the offenses and to have the indictments nolle prosequied were initiated and undertaken by defendant's attorney. He was endeavoring to eliminate trials of criminal indictments returned by the grand jury and to relieve defendant of the possible stigma of a criminal record. Initially he was informed by the prosecutor that such procedure could not be permitted since it was contrary to the established policy of the assignment judge. Unable to contact Judge Schalick, the attorney submitted his proposal to the acting assignment judge.
It is obvious he did not inform Judge Wick that the prosecutor had advised him such procedure was contrary to Judge Schalick's established policy. If he had, it is doubtful that Judge Wick would have considered counsel's proposal. That Judge Wick would not now enter an order nunc pro tunc permitting a nolle prosequi of the indictments, if presented to him, is indicative of this fact.
Counsel's letter to Judge Wick stated that the prosecutor's staff and Judge McGann were willing to allow defendant to plead to the lesser disorderly person charges and to have the *360 indictments "nolle prosed." In view of Judge McGann's statement that he had understood only one charge was involved and his attitude would not have been the same if he had known there were five, and the prosecutor's expressed unwillingness to proceed in view of Judge Schalick's policy, the statement in the letter does not appear to be a fair appraisal of the situation. Unquestionably the letter directly affected Judge Wick's decision.
When Judge Wick's letter to Judge McGann granting "permission" to follow such procedure and bearing Judge McGann's notation, "tell J. Wick we shall be guided accordingly," was turned over to the prosecutor, it is true that the latter acquiesced therein by notifying the municipal courts involved and defense counsel. His acquiescence was brought to an end sharply on Judge Schalick's return when he was told the indictments could not be nolle prosequied.
We are not confronted here with a situation where a prosecutor through fraud, misrepresentations and overtures undertaken in bad faith persuaded defendant to place himself in jeopardy. Defendant's counsel initiated the proposed agreement. We do not find that the action of the prosecutor in this setting was such that it constituted a denial of fundamental fairness shocking to the universal sense of justice. See State v. Miller, 16 N.J. Super. 251, 258 (App. Div. 1951).
Furthermore, there is nothing in the record which indicates a "package deal," viz., that defendant would plead to a disorderly person complaint only in the event all five indictments would be nolle prosequied. Defendant, by having pleaded to two charges as a disorderly person, already has successfully barred prosecution on two indictments.
Defendant alleges he is irreparably prejudiced by the refusal of the State to nolle prosequi or to dismiss the remaining three indictments. We fail to see such prejudice. Defendant is entitled to his day in court on the trial of these indictments. The convictions in the municipal courts of two offenses under the Disorderly Persons Act cannot be introduced in evidence *361 against him. State v. Dietz, 5 N.J. Super. 222, 225 (App. Div. 1949). And, since they are not convictions of crimes, they cannot be shown to affect his credibility as a witness. State v. Block, 119 N.J.L. 277, 282 (Sup. Ct. 1938), affirmed 121 N.J.L. 73 (E. & A. 1938).
It is urged that the newspaper publicity resulting from the pleas of guilty entered in the municipal courts will cause prejudice. We see no merit in this argument. Certainly precautionary measures in the selection of an impartial jury will protect defendant's right to a fair trial.
A significant issue in this case is the question of the validity of an agreement between the prosecutor and a defendant to nolle prosequi or dismiss an indictment. We find no legal precedents in New Jersey on this issue.
Defendant cites decisions in various jurisdictions pertaining to the enforceability of an agreement wherein a prosecutor promises an accomplice immunity from prosecution if the accomplice will turn "State's evidence." These agreements have been upheld in some jurisdictions, 15 Am. Jur. § 321, p. 17. In the one reported decision in our State, State v. Graham, 41 N.J.L. 15 (Sup. Ct. 1879), the court stated that where such an agreement existed, it was in the province of the court to assent to and advise the entry of a nolle prosequi whenever the exigency of justice or the public convenience requires such course to be adopted.
Defense counsel further cites decisions in other jurisdictions where a defendant has agreed with the prosecutor, with the consent of the court, to plead guilty to one or more indictments upon a promise that certain other indictments will be nolle prosequied. See State v. Ward, 112 W. Va. 552, 165 S.E. 803, 85 A.L.R. 1175 (Sup. Ct. App. 1932); People v. Siciliano, 185 Misc. 149, 56 N.Y.S.2d 80 (Cty. Ct. 1945); Annotation, 85 A.L.R. 1177.
These cases are distinguished from the facts before us. In Ward, supra, it was agreed between the defense counsel on one hand and the prosecutor and Banking Commissioner on the other, subject to the court's approval, that if defendant *362 would plead guilty to one indictment charging a violation of the banking laws and assist the commissioner to liquidate the accounts of the bank, defendant would be discharged from further prosecution under 13 other indictments of a similar nature. The court approved the agreement. Defendant pleaded guilty to the single indictment and rendered the promised assistance to the commissioner. He was sentenced to the penitentiary and the 13 remaining indictments were nolle prosequied.
Subsequently he was again indicted on the 13 charges and entered a special plea relying upon the agreement. The court held that the plea was good and that the agreement would be kept. It must be noted that defendant Ward, in addition to his plea to the single indictment, provided aid and assistance to the banking commissioner in the liquidation of the bank as a consideration for such agreement.
In People v. Siciliano, supra, defendant was indicted on two charges of robbery in the first degree. In open court, with the consent of the district attorney, defendant pleaded guilty to robbery in the second degree. The court then stated:
"This plea is accepted with the understanding that at the time of sentence the district attorney dismisses, or moves to dismiss indictment B. Correct?"
The district attorney answered in the affirmative. Subsequently, and before sentence, the district attorney moved indictment B for trial and defendant was convicted. In a habeas corpus proceeding the court set aside the conviction under indictment B. In Siciliano the overtures were made by the district attorney to secure a plea of guilty to one indictment, thereby obviating the expense of a trial and the uncertainty of a jury's verdict. The pledge by the district attorney, made in open court, in which the court concurred, not to prosecute defendant on the second indictment, induced the latter to relinquish his absolute right to stand trial on the A indictment and thus put the prosecution to its proof. To *363 permit the repudiation of such an agreement made in open court would have placed the stamp of approval upon a fraud perpetrated by the district attorney with the approval of the court. See also People v. Sullivan, 276 App. Div. 1087, 96 N.Y.S.2d 266 (App. Div. 1950); State v. Hingle, 242 La. 844, 139 So.2d 205 (Sup. Ct. 1962); State v. Mockosher, 205 La. 435, 17 So.2d 575 (Sup. Ct. 1944).
This is not the situation which confronts us. Here the overtures to plead in the municipal courts on disorderly person charges instead of facing a trial on the criminal indictments were not made by the prosecutor. Defendant has not pleaded to such offenses and has not been placed in jeopardy. Nor was the agreement made in open court with full knowledge of all the facts brought to the attention of the acting assignment judge.
We are satisfied that the cases cited by defendant as judicial precedents are not analogous to the matter before us. 2 Restatement, Contracts, § 549, p. 1054 (1932), makes a distinction between agreements where the consideration is the accused's becoming a witness for the prosecution, which it considers legal, and all other agreements, which it declares to be illegal. The theory is that for the prosecutor, as representative of the public, to agree to withdraw his prosecution of a defendant there must be a sufficient consideration, in the form of cooperation such as the giving of evidence, to protect the public's interest. This is simply the balancing of a reduction in the charge or the elimination of a charge against a cooperative defendant with the probability of a conviction of another defendant resulting from that cooperation. On balance, there is a gain accruing to the public.
Thus, where a defendant seeks special treatment without being able to offer sufficient consideration to benefit the public his proposal should be denied, and a prosecutor's agreement to grant such special treatment cannot be enforced. An offer by a defendant to plead to a lesser charge is not sufficient consideration for the nolle prosequi of an indictment based on the same act; the public is not being compensated for forbearing *364 to try defendant for the highest degree of his offense. Defendant enters into such an agreement at his peril, knowing that if the prosecutor reneges, he will not be able to enforce it.
New Jersey cases offer no precedents on this issue. Kentucky has refused to uphold such agreements, finding them not binding, Commonwealth v. Smith, Ky., 244 S.W.2d 724 (Ct. App. 1951), and that the court was without power to compel the state's attorney to abide by such an agreement in opposition to his sense of official duty. Commonwealth v. Hughes, 153 Ky. 34, 154 S.W. 399 (Ct. App. 1913).
As to agreements between a prosecutor and a defendant we have held in our State that a prosecutor has no authority to make any agreement on the subject of guilt of a particular crime, or a sentence. In re Cardinale, 36 N.J. Super. 137 (App. Div. 1955); State v. Terry, 30 N.J. Super. 288 (App. Div. 1954); State v. Pometti, 23 N.J. Super. 516 (App. Div. 1952), affirmed 12 N.J. 446 (1953); State v. Miller, 16 N.J. Super. 251 (App. Div. 1951), cert. denied 342 U.S. 934, 72 S.Ct. 379, 96 L.Ed. 695 (1952). In State v. Pometti the court stated (at p. 521) that even if such an agreement were made, defendant is charged with the knowledge that it is clearly illegal.
As to the three remaining indictments in the case before us, we reiterate  defendant has suffered no prejudice. Such agreement was not the product of fraud, misrepresentation or bad faith on the part of the State which has placed defendant in jeopardy. The agreement his counsel sought to negotiate was at best executory, without consideration therefor on the part of defendant. And finally, for the reasons herein expressed, we are satisfied that such agreement was invalid and unenforceable.
The motion to compel the prosecutor to move to nolle prosequi the three indictments or in the alternative to dismiss such indictments will be denied. The order of the Superior Court, Law Division, is affirmed except as modified herein.
*365 GOLDMANN, S.J.A.D. (dissenting).
At the outset, it is necessary to indicate the areas in which I find myself in full agreement with the majority opinion.
First, there is no question that defendant cannot be tried on the two indictments dealing with the offenses for which he has been convicted in the municipal courts of Edgewater Park and Burlington County, respectively. The evidence necessary to convict him of open lewdness in violation of N.J.S. 2A:115-1 is the same as that supporting his convictions under the Disorderly Persons Act, N.J.S. 2A:170-5. The majority quite properly notes that a prosecution under those indictments would contravene the double jeopardy provision of the 1947 Constitution of New Jersey, Art. I, par. 11. State v. Dixon, 49 N.J. 180 (1963); State v. Mark, 23 N.J. 162 (1957); State v. Labato, 7 N.J. 137 (1951).
Secondly, I am in full accord with the majority view that if the agreement between defendant and the State is valid and enforceable, it can be raised in bar of the prosecution of the remaining three indictments.
It is at this juncture that I am obliged to depart from the majority opinion.
County Judge McGann, in light of R.R. 3:11-3 requiring the approval of the assignment judge for the entry of a dismissal (formerly nolle prosequi) of the indictments, held that he had no authority to grant the relief requested by defendant. Notwithstanding that both the regular assignment judge, Judge Schalick, and the then acting judge, Judge Wick, have informally indicated that neither would now order a dismissal of the indictments, this court, in the exercise of its original jurisdiction (R.R. 1:5-4, made applicable to the Appellate Division by R.R. 2:5), may enter such order as justice requires.
With all deference to my associates, I cannot subscribe to the inferences and conclusions they draw from the factual circumstances surrounding the agreement in question. They repeatedly emphasize that it was defendant's attorney who initiated the proceedings to downgrade the offenses, and some *366 stress is given this factor in their attempt to distinguish the case of People v. Siciliano, 185 Misc. 149, 56 N.Y.S.2d 80 (Cty. Ct. 1945), to which I will shortly refer. In stressing the initiative taken by defendant, the majority ignores the uncontradicted allegation that it is the inflexible practice of the regular assignment judge not to permit a dismissal of indictments under circumstances such as are here present. The prosecutor in his brief makes the following statement:
"* * * The defendant's attorney was advised by the Prosecutor of Burlington County that he was sympathetic toward the social injury which would be sustained by the defendant if he were convicted of the charges of lewdness upon five indictments returned against him * * *. The attorney for defendant was further advised that the Assignment Judge of Burlington County, W. Orvyl Schalick, would not nolle prosse indictments against the defendant for the specific reasons where the proof was clear the defendant was guilty of the charge in the indictments, and the Prosecutor would not move for a nolle prosse of these indictments without prior approval of a motion for a nolle prosse by the Assignment Judge * * *."
After being so advised, defendant's attorney took the only avenue open to him  a direct appeal to the assignment judge. The latter being absent, counsel naturally went to the acting assignment judge.
If the resultant agreement is otherwise enforceable, it should not be nullified because defense counsel was the one who took positive action in light of what the prosecutor had told him. It should not be nullified because, under the practice apparently prevailing in Burlington County, the prosecutor would not exercise his discretion to initiate dismissal proceedings, but instead took his cue from the assignment judge who, it would seem, generally looked with disapproval upon indictments being dismissed where the proof was clear. If such was the prevailing policy  and we do not know its full reach  it would be one which overlooked the possible merits of an individual case.
The majority opinion carries the intimation that defense counsel did not fully inform Judge Wick of all the background *367 facts. Initially, it should be noted that counsel did not "shop about" in seeking out Judge Wick. He had called Judge Schalick's chambers, and spoke to Judge Wick only after he had been informed that Judge Schalick was on vacation and unavailable. He acted with complete propriety in presenting what was an emergent matter to the acting assignment judge. Nor does the fact that counsel allegedly failed to inform Judge Wick that Judge Schalick had an established policy against the dismissal of indictments smack of impropriety. In the first place, counsel could reasonably have believed that Judge Wick was fully acquainted with the policies followed by his assignment judge. Secondly, it is not at all clear how counsel could be expected to assume that an absolute policy followed by the assignment judge would inevitably control the decision of the judge assigned to act in his stead.
Defense counsel's letter to Judge Wick did state that the prosecutor's office and County Judge McGann were willing to allow the indictments to be dismissed and to have defendant plead to the lesser charge of being a disorderly person  this in light of their agreement with the psychiatrist, Dr. Bird, that with proper psychiatric treatment defendant could achieve a complete and satisfactory rehabilitation. It was further pointed out to Judge Wick that their attitude also stemmed from the fact that no children were involved and defendant's offenses involved no force or touching.
In the course of the colloquy on defendant's motion, Judge McGann stated that his approval was obtained only because defense counsel had informed him there was only one charge involved; his attitude would have been different had he known there were actually five offenses. Judge McGann's approval of the course later followed was obtained by defense counsel in a telephone conversation. It is entirely possible that there was an honest misunderstanding as to the number of charges involved. There is nothing to indicate that counsel intentionally misrepresented the number of offenses. The record indicates that counsel, in every other instance, plainly stated *368 there were five indictments. His letter to Judge Wick clearly set out that fact. Furthermore, in the letter which Judge Wick sent to Judge McGann, in which he granted permission to dispose of the charges under the Disorderly Persons Act and to "nolle prosse" the indictments, there was a plain reference to five charges of open lewdness. Significantly, Judge McGann noted his acquiescence at the foot of Judge Wick's letter, without questioning the number of indictments concerned. That notation reads:
"Acknowledge and tell J. Wick we shall be guided accordingly. Tell him also that we think the Prosecutor should be notified and consent to the request."
The prosecutor has, since the very inception of this matter, given every indication that he would willingly move to dismiss the indictments but for the regular assignment judge's policy. That representation was repeated at the oral argument. I therefore find nothing misleading in defense counsel's reference to the approval of a dismissal by the prosecutor's office. As a matter of fact, the prosecutor has given all the approval he believes he is authorized to give.
Judge Wick, in my opinion, was fully and fairly apprised of the surrounding circumstances. As acting assignment judge he was vested with all the powers of the regular assignment judge, absent any restrictions on or qualifications of the powers contained in the order appointing him acting assignment judge. Cf. State v. Pillo, 15 N.J. 99 (1954). There were no such restrictions or qualifications in the order of appointment. In the exercise of his powers as acting assignment judge, Judge Wick gave his approval to the open lewdness charges being disposed of under the Disorderly Persons Act, and to the dismissal of the indictments. Judge McGann, the prosecutor and the defendant then put in motion the necessary proceedings to downgrade the offenses. The matter was moving toward a full disposition when Judge Schalick returned from vacation. This litigation resulted after he had indicated to the prosecutor his objection to the dismissal of *369 the indictments. The prosecutor thereupon refused to move such dismissals.
I am convinced there existed an agreement between the prosecutor and defendant, with the fullest knowledge and approval of the court, whereby defendant was to plead guilty to the lesser offenses, and in return the prosecutor would move to dismiss the five indictments. I am equally persuaded that defendant acted in good faith at all times.
I come, then, to a discussion of the enforceability of the prosecutor's promise to dismiss the indictments. This question has not previously been considered by our courts. However, in State v. Graham, 41 N.J.L. 15 (1879), our former Supreme Court had occasion to examine the closely analogous problem of the enforceability of a promise of immunity made to an accomplice in return for his giving state's evidence. The grant of immunity was there traced to the English practice of recommending the King's mercy for an accomplice who gave full and fair evidence for the Crown. Chief Justice Beasley, writing for the court, cited with approval the leading case of Rex v. Rudd, Cowper 331 (K.B. 1775), where Lord Mansfield held that an accomplice who became a witness for the Crown thereby secured "an equitable title to the recommendation for the King's mercy." Referring to the English practice, the Chief Justice said:
"The practice thus described has been approximately followed, very generally, by the American courts, and I have no doubt that it is a part of our inherited jurisprudence, for it was completely in vogue when our colonial existence terminated. * * *" (at page 18)
See also, People v. Bogolowski, 326 Ill. 253, 157 N.E. 181 (Sup. Ct. 1942); Ingram v. Prescott, 111 Fla. 320, 149 So. 369 (Sup. Ct. 1933); Scribner v. State, 9 Okla. Cr. 465, 132 P. 933 (Cr. Ct. App. 1913); Lowe v. State, 111 Md. 1, 73 A. 637 (Ct. App. 1909); Commonwealth v. St. John, 173 Mass. 566, 54 N.E. 254 (Sup. Jud. Ct. 1899); Whitney v. State, 53 Neb. 287, 73 N.W. 696 (Sup. Ct. 1898); Camron v. State, 32 Tex. Cr. R. 180, 22 S.W. 682 (Ct. Cr. App. *370 1893); United States v. Ford, 99 U.S. 594, 25 L.Ed. 399 (1878).
The majority would distinguish the instant case from those where a promise of immunity has been given an accomplice in return for his testimony. It is stated that a plea of guilty to a lesser offense is not sufficient consideration for a promise to dismiss an indictment, and 2 Restatement, Contracts, § 549, p. 1054 (1932), is cited in support of the proposition. Under the Restatement, any agreement between a prosecutor and a defendant is illegal, except a promise given in consideration of the accused becoming a witness for the state.
In my opinion, an inquiry into adequacy of consideration is of questionable relevance. The touchstone of the cases enforcing promises of immunity is set out in the succinct statement of the Massachusetts Supreme Judicial Court in Commonwealth v. St. John, above:
"When such promises are made by the public prosecutor, or with his authority, the court will see that due regard is paid to them, and that the public faith which has been pledged by him is duly kept." (173 Mass., at page 569; 54 N.E., at page 254)
A pledge of the public faith, and not the law of contracts, is the motivating factor in the enforcement of these promises. Further, as demonstrated by what was said by Chief Justice Beasley in State v. Graham, above, the practice of enforcing promises of immunity stems from the common law recognition that one who gave evidence for the Crown was possessed of an equitable title to a recommendation for mercy. Clearly, the practice of enforcing such agreements could not, and did not in its inception, develop from a contractual relationship between the Crown and the Crown witness.
In this case the prosecutor, with full and informed court approval, promised defendant that the indictments pending against him would be dismissed. The wisdom of the agreement aside, that promise constituted a pledge of the public faith which should not have been repudiated. The morals of the market place are a poor guide for the sovereign's actions.
*371 However, were I convinced  as I am not  that the enforceability of the agreement in question is to be determined by the law of contracts, I would still be obliged to disagree with my associates. Detriment to the promisee is sufficient consideration for a contract. Defendant relinquished his absolute right to stand trial on all five indictments and thus put the prosecution to its proof, with an opportunity on his part to present whatever valid defenses he had. Instead, he pleaded guilty to two of the charges under the Disorderly Persons Act, and was on the very threshold of pleading to the remaining three when the prosecutor, who had heard from the regular assignment judge in the meantime, changed his mind. Even though defendant pleaded to the lesser charge in two instances, he did not escape newspaper notoriety, as newspaper accounts at the time demonstrate. Nor did he or his family escape the attendant social ostracism. The detriment suffered by defendant is at least as great as that endured by one who turns state's evidence, and yet the latter completely escapes the stigma of a criminal conviction. Not so with defendant.
If the benefit to the promisor (the prosecutor representing the State) is considered, it is obvious that defendant's pleas of guilty to charges of disorderly conduct would eliminate the necessity of a trial, thereby saving the State time and money and avoiding the uncertainty of a jury verdict. The majority takes the position that a plea to a lesser charge does not compensate the public for forbearing from trying defendant for the highest degree of his offense. If such is truly the case, then one may reasonably ask, what compensation does the public receive when an accomplice is permitted to go free in return for his testimony? At the least, this can be said: the lawbreaker who pleads to a lesser offense is to some extent subjected to the retributive and rehabilitative forces of the criminal law.
The precise question which confronts this court has been decided in sister jurisdictions with varying results. As noted by the majority, the Kentucky courts have refused to uphold agreements to downgrade offenses. Commonwealth v. Smith, *372 Ky., 244 S.W.2d 724 (Ct. App. 1951); Commonwealth v. Hughes, 153 Ky. 34, 154 S.W. 399 (Ct. App. 1913). However, such agreements have been enforced in State v. Hingle, 242 La. 844, 139 So.2d 205 (Sup. Ct. 1962); State v. Ward, 112 W. Va. 552, 165 S.E. 803, 85 A.L.R. 1175 (Sup. Ct. App. 1932), and People v. Siciliano, above.
The majority's attempt to distinguish the Ward case is, in my opinion, unpersuasive. While it is true that the defendant there, in addition to pleading guilty to one of 14 indictments, rendered certain assistance to the state banking commissioner, I do not read the case as turning on that fact. The court's holding was:
"Promises of immunity from prosecution made to a witness by a prosecuting officer with the consent of the court are justified on the ground of public policy. * * * The courts treat such promises as pledges of the public faith. [Citation omitted] The promise alleged in the instant plea (that of the prosecuting attorney with the approval of the court) is equally a pledge of the public faith which in our opinion should be duly kept." (112 W. Va., at pages 554-555, 165 S.E., at pages 804-805; italics the court's)
It is obvious that the court was concerned with the fact that the prosecutor had made a promise, and not with the inducement for that promise.
Equally unpersuasive is the majority's attempt to distinguish People v. Siciliano, above, a case which in my opinion is closely analogous to the one at bar. Siciliano was indicted on two charges of robbery in the first degree. He pleaded guilty to robbery in the second degree, at which time the prosecutor, with the court's consent, agreed to dismiss the remaining indictment. However, Siciliano was subsequently tried and convicted on the other indictment. The court set aside the conviction in a habeas corpus proceeding. Referring to the fact that the agreement for immunity was predicated upon the plea of guilty to a lessor offense and not upon any agreement to turn State's evidence, the court said:
"It is true that Siciliano did not promise to turn State's evidence against Rubino. Nonetheless the district attorney sought to have *373 Siciliano convicted and sentenced upon his own confession and plea of guilty; thus to obviate the expense of a trial, as well as the uncertainty of a jury's verdict. It was his solemn pledge, in which the court concurred, not to prosecute Siciliano on the B indictment that induced the latter to relinquish his absolute right to stand trial on the A indictment and thus to put the prosecution to its proof. He did not escape the stigma of conviction and punishment as does the State's witness who gives evidence against his accomplices."
The similarity to the instant case is marked.
The majority would distinguish Siciliano on three grounds: (1) it was defendant and not the prosecutor who here initiated the attempt to downgrade the charges; (2) defendant has not pleaded to the three remaining offenses charged and has not been placed in jeopardy; and (3) the agreement in this case was not made in open court, with the assignment judge in full possession of all the facts.
I have already discussed the first and third of these grounds. That defendant had to take the initiative was, as I have said, necessitated by the prosecutor's refusal to move because of the policy against dismissing indictments established by the regular assignment judge. I have also indicated my conviction that all relevant facts were laid before the acting assignment judge. That this was done by letter and not in open court is of small moment.
I do not wholly grasp the second of the three stated grounds for distinguishing Siciliano and like cases. Defendant has already pleaded guilty to two of the offenses and been convicted and sentenced under the Disorderly Persons Act. If what the majority refers to is the fact that defendant has not yet pleaded to the remaining three charges, then, putting to one side the fact that he would have done so had not the State repudiated its agreement, it appears that the majority now contradicts its previously announced position that the agreement, if valid and enforceable, may be raised as a bar to further prosecution. It is true that the defendant in Siciliano sought to enforce the prosecutor's agreement after being convicted on the indictment which the prosecutor had promised to dismiss. Certainly the majority does not hold that the *374 agreement here in question would be enforceable only after defendant has been convicted and sentenced.
This is as appropriate a place as any to comment upon the majority's reference to the absence of a "package deal." Passing the invidious connotation which "package deal" usually bears, it is appropriate to refer again to the setting which led to the agreement under consideration. The prosecutor had five indictments before him, all involving the same type of offense  indecent exposure in the presence of women  the incidents all having taken place within a short period of time. Defendant retained counsel who at once had his client undergo a psychiatric examination by Dr. Bird. The doctor reported that his patient was suffering from a neurosis with compulsive behavior, that he had recommended psychiatric treatment, and that defendant was willing to accept such treatment. Defense counsel then communicated this to the prosecutor to determine whether defendant could plead to the lesser disorderly person charge in the three municipal courts involved and have the indictments dismissed. Counsel also solicited the county judge's aid. After defendant had been arraigned and pleaded not guilty to the indictments, his counsel again conferred with the prosecutor and showed him Dr. Bird's report, explaining defendant's family situation and the danger of his losing his job. It was then that he was advised of the assignment judge's policy against dismissals. Defense counsel's unsuccessful attempt to reach the assignment judge, and the letter to the acting assignment judge, followed. The letter dealt with all five indictments and the possibility of pleading to the lesser charge of being a disorderly person. Judge Wick's reply was addressed to all five charges. In short, at every step of the proceedings, from the time defense counsel first spoke to the prosecutor until he learned that his client would not be allowed to plead to the remaining three charges in the Levittown Municipal Court, the discussions and arrangements involved all five charges as a group. Everyone concerned understood and agreed that defendant should proceed to plead in the several municipal *375 courts, and the way would then be clear to move the dismissal of the five indictments. Defendant carried out his part of the bargain as far as he was allowed to do so. He was cut down in mid-path.
In all frankness, I consider it idle to think of the five charges and the promises made on each side except as a single whole. If one may speak of part performance in a setting such as this, then defendant certainly gave part performance.
In my opinion, the equities here weigh heavily in favor of defendant. Refusal to enforce the agreement made by the prosecutor, involving all five charges, should not be permitted to be easily repudiated. Practical considerations often lead to a defendant's coming to terms with the prosecution, and as long as this is done with complete exposure of all the facts and with the full knowledge of the court, the arrangement should be honored.
I therefore respectfully dissent from so much of the majority opinion as holds the agreement in question to be invalid and unenforceable. In my view, defendant should be permitted to plead to the three remaining charges in the municipal court under the Disorderly Persons Act. The prosecutor should then move for a dismissal of the indictments, and the motion be granted.