188 So.2d 24 (1966)
STATE of Florida, Appellant,
v.
Sampson DAVIS, Appellee.
No. 6766.
District Court of Appeal of Florida. Second District.
June 17, 1966.
*25 Frank Schaub, State Atty., Bradenton, for appellant.
Smith, Sheldon & Smith, Orlando, for appellee.
LILES, Judge.
Appellant, State of Florida, brings this appeal from the trial court's order quashing the indictment filed against appellee, defendant below.
Defendant was indicted for first degree murder and entered a plea of not guilty. He filed a motion to quash the indictment on the basis of an alleged "immunity" agreement between defendant and the then assistant state attorney, George Vega, Jr. The motion alleged that Mr. Vega and defendant's counsel had agreed that defendant would take a polygraph or "lie detector" examination to be given by an operator selected by the parties. If the results of the examination showed defendant was telling the truth in denying his guilt, then he would not be prosecuted, but if the examination indicated defendant was not telling the truth, then defendant would enter a plea of guilty to the lesser charge of manslaughter. If the test results were inconclusive, neither side would be bound. The motion alleged that defendant had taken the examination; that the operator who gave it felt defendant was telling the truth but subsequently changed his mind after talking with another polygraph officer; and that the state was now attempting to try defendant. The motion also alleged a second "agreement" to the effect that a nolle prosequi would be entered in the case if defendant and his attorneys would cooperate with the state by providing "information concerning the defendant's activities and observations on the day and night of the alleged killing * * * and other facts and information concerning this occurrence * * *." It was alleged that defendant's attorneys provided the state with this information.
The trial court appointed a commissioner to take testimony on the matter. A hearing was held in which testimony was given by various persons involved in the *26 circumstances surrounding the making of the alleged agreements. It developed that the agreement regarding the taking of the polygraph examination was made shortly before the case was to be tried. Judge Odom, to whom the case had originally been assigned, recalled that Mr. Vega had informed him that it had been agreed between counsel to take the case off the trial docket for the purpose of giving defendant a "lie detector" examination. Judge Odom testified that he agreed to take the case off the trial docket but was not sure whether it was to be permanently removed or merely continued. He did state however that he agreed with whatever Mr. Vega asked.
Testimony before the commissioner showed that the parties agreed the polygraph examination would be given by Deputy Clyde Gill of the Manatee County Sheriff's Department. Deputy Gill administered the examination using both the Keeler technique and the Baxter technique. Deputy Gill testified that after reviewing the charts and graphs it was his opinion that defendant was telling the truth. He announced this to the parties and some of the deputy sheriffs who had investigated the case. There was some doubt as to the validity of Gill's conclusion, and he reviewed the charts and graphs again but was still convinced defendant was telling the truth. He then called one Cliff Powell, a polygraph operator with the Florida Sheriff's Bureau, who examined Gill's test results. Gill testified that Powell was of the opinion that the test was inconclusive. Gill then attempted to withdraw his previous conclusion. He stated, however, that had he not talked with Powell, he would not have changed his mind and that he really was accepting Powell's opinion in lieu of his own.
Powell did not testify before the commissioner, but was called as a witness at the hearing before the trial judge on defendant's motion to quash. Powell testified that he examined Gill's charts but did not examine defendant personally. Powell indicated that he did not approve of the Keeler technique used by Gill. Powell admitted, however, that this technique is still recognized by authorities in the field and that it is a matter of opinion whether the Keeler method is a proper technique. Powell also admitted that much of the outcome of a polygraph test depends upon the examiner.
After Deputy Gill first announced his conclusion that defendant was telling the truth, Mr. Vega indicated that defendant would not be tried and asked defendant's counsel for any assistance they might give in helping find the guilty party. The second alleged agreement was then reached. There is conflict as to exactly what the terms were, but the evidence supports a finding that the parties merely agreed that anything revealed by either defendant or his counsel would not be used against defendant. The state never got to talk to the defendant, but defense counsel did state that defendant had driven to Fort Myers on the night of the killing with two men who could not be located; that defendant had pawned the alleged murder weapon before the killing; and that another person had the weapon. Defendant's counsel also indicated they would send Mr. Vega a statement made by defendant, but this was never received by Mr. Vega.
After the hearing, the trial judge granted' defendant's motion, and the state appealed.
If the trial court's action is to be sustained, it must be upon the theory that the agreement regarding the polygraph examination is binding and enforceable. We feel that the second agreement is not an agreement not to prosecute, but merely an agreement that anything revealed by either defendant or his counsel would not be used against him. This agreement could be used to suppress any such statements introduced at trial, but certainly not as a bar to prosecution.
*27 The state contends that even if the agreement regarding the polygraph examination is valid, it cannot be raised as a bar to prosecution. It is argued that an immunity agreement may not be pleadable in bar of an adjudication of guilt, although it may affect the right of the court to enforce or to impose a sentence. This seems to be the general rule in cases where immunity is promised an admittedly guilty criminal in return for testifying or giving other evidence against his confederates in the crime. See State ex rel. Marcus v. Pearson, 68 So.2d 400 (Fla. 1953); Cortes v. State, 135 Fla. 589, 185 So. 323 (1938); Ingram v. Prescott, 111 Fla. 320, 149 So. 369 (1933).
The case at bar, however, does not involve such a situation. Here a professed innocent man agreed to take a polygraph examination to prove his innocence. He was, however, willing to risk a plea of guilty to a lesser charge if the test indicated he was not telling the truth. Thus, the case is more analogous to those in which immunity is extended to an accused on one charge in return for his plea of guilty to another charge. We were unable to find any reported Florida cases on this point, but other jurisdictions have dealt with the problem.
The leading case appears to be State v. Ward, 112 W. Va. 552, 165 S.E. 803, 85 A.L.R. 1175 (1932). There fourteen indictments for violation of banking laws were returned against the defendant. The prosecuting attorney, with court approval, agreed that if the defendant would plead guilty to one indictment, he would not be prosecuted on the other indictments. Defendant entered his plea of guilty, but the prosecutor later attempted to try him on the other charges. The defendant raised the agreement as a special plea to the indictments. The West Virginia Supreme Court held the agreement valid and enforceable stating:
"Promises of immunity from prosecution made to a witness by a prosecuting officer with the consent of the court are justified on the ground of public policy. * * * The courts treat such promises as pledges of the public faith. * * * The promise alleged in the instant plea (that of the prosecuting attorney with the approval of the court) is equally a pledge of the public faith which in our opinion should be duly kept."
In State v. Hingle, 242 La. 844, 139 So.2d 205 (1962), the Supreme Court of Louisiana held enforceable and a proper plea in bar of prosecution an agreement between defendant and the district attorney that defendant would plead guilty to a lesser offense in return for the district attorney's dismissal of other charges against him. See also State v. Ashby, 43 N.J. 273, 204 A.2d 1 (1964).
Thus, it can be seen that where a plea of guilty is entered in reliance upon a promise to dismiss other charges, the promise may be enforced and raised as a bar to prosecution. The difference between that situation and the one before us is the added act regarding the polygraph examination. Defendant had agreed to plead guilty to manslaughter if the test was not in his favor, but the state had agreed to dismiss the case if the results indicated defendant was telling the truth. This was a pledge of public faith  a promise made by state officials  and one that should not be lightly disregarded. As Judge Goldmann stated in his dissenting opinion in State v. As by, 81 N.J. Super. 350, 195 A.2d 635 (1963) [which case was reversed by the New Jersey Supreme Court in State v. Ashby, 43 N.J. 273, 204 A.2d 1 (1964)]:
"In this case the prosecutor * * * promised defendant that the indictments pending against him would be dismissed. The wisdom of the agreement aside, that promise constituted a pledge of the public faith which should not have been repudiated. The morals of the market place are a poor guide for the sovereign's actions." 195 A.2d at 646.
*28 The state contends next that the agreement was not approved by the court and is therefore invalid. Again there does not seem to be much doubt as to the necessity of court approval in the instance of immunity to a confessed criminal in return for his testimony against his confederates. See Cortes v. State, 135 Fla. 589, 185 So. 323 (1938), and Ingram v. Prescott, 111 Fla. 320, 149 So. 369 (1933). As we have pointed out, however, the instant case does not involve that set of circumstances.
In cases where the promise of dismissal of several pending charges given in return for a plea of guilty to one charge is held enforceable, many opinions indicate court approval was first obtained. However, those jurisdictions holding that such court approval is necessary to the validity of such an agreement all have statutes to the effect that a state prosecutor may not dismiss charges under any circumstances without court approval. Therefore, in absence of such a statute, court approval may not be necessary. See the excellent discussion on this point in State v. Hingle, 242 La. 844, 139 So.2d 205 (1902).
Florida does not have a statute requiring court approval of the entry of a nolle prosequi, and the prosecuting attorney controls the entry of a "nol pros" up to the time the jury is sworn. Wilson v. Renfroe, 91 So.2d 857 (Fla. 1956). Thus, it might well be argued that court approval is not a necessary ingredient to the validity of an agreement such as the one before us. We do not decide that issue now, however, since the record contains evidence which supports a finding that the court did approve of the agreement.
The state's final contention is that the results of the examination were "inconclusive" and, thus, according to the agreement, neither party was bound. The state relies upon Cliff Powell's testimony for this proposition, but we cannot agree. The agreement was that the polygraph test would be given by a person selected by the parties. Deputy Gill was that person. His conclusion was that defendant was telling the truth. Gill admitted that his later change of "opinion" was really Powell's. Powell admitted that his opinion was not based upon any re-examination of defendant, but upon his disapproval of one of Gill's techniques and that the outcome of a polygraph examination depended largely upon the operator. Deputy Gill, not Powell, was the agreed upon operator, and his opinion before it was "changed" by Powell should control.
For the foregoing reasons, the ruling of the trial court is affirmed.
ALLEN, C.J., and MAXWELL, OLIVER C., Associate Judge, concur.