228 So.2d 421 (1969)
Willie James BUTLER, Appellant,
v.
STATE of Florida, Appellee.
No. 1736.
District Court of Appeal of Florida. Fourth District.
November 28, 1969.
*422 Irvin Frank, Jr., Public Defender, Fort Pierce, for appellant.
Earl Faircloth, Atty. Gen., Tallahassee, and Charles W. Musgrove, Asst. Atty. Gen., West Palm Beach, for appellee.
WALDEN, Judge.
Defendant was convicted of rape upon trial by jury and duly sentenced. He appeals. We reverse.
This appeal turns upon an understanding and application of a pre-trial agreement made between the state and the defendant wherein the state agreed not to prosecute upon certain conditions being met.
Shortly after indictment the written agreement was made which provided that if the defendant would take a polygraph test "* * * [T]hat the state will be bound by the results of the test or tests if it develops that he is telling the truth when he denies any participation in any of the alleged rapes." Further, the defendant agreed, "* * * [T]hat if the test or tests result in an opinion by the operator that (defendant) is not telling the truth, when questioned about his participation in the alleged rapes, that (defendant) is bound by the answers and the opinion of the polygraph operator and * * *" that the unfavorable test results may be presented as evidence at trial and on appeal without his objection. Finally, it was provided that the agreement would be cemented by a stipulation made in open court, with defendant "* * * being fully advised by the Judge of all of his constitutional rights. * * *"
The defendant, his counsel and the State Attorney went before the trial judge in open court. The agreement was extensively discussed by the court, counsel and the defendant.[1]
*423 The defendant began his performance of his part of the bargain and the test was duly taken before a polygraph operator approved by both sides. The operator then testified that the defendant was telling the truth when he denied participation or knowledge of the rapes.[2] The State's Attorney thereafter, and according to the *424 agreement so far as the record shows, obtained an order of nolle prosse of the indictment. Here it would seem that the transaction, if a criminal proceeding may be so termed, was at an end. But, no, the defendant was again indicted on the same charge and events. He unsuccessfully moved to quash on the basis of the agreement with the state. He was tried, found guilty, and this appeal is addressed to that adjudication.
With this background the defendant contends that he is entitled to be exonerated from the charge. We agree.
While the authorities in Florida are scant on the point, we note that one of our sister courts in the case of State v. Davis, Fla. App. 1966, 188 So.2d 24,[3] dealt with a like situation  one that can not be meaningfully distinguished from the appeal at hand. There, as here, a professed innocent man agreed to take a polygraph examination to prove his innocence. There, as here, the state had agreed to dismiss the case if the results indicated defendant was telling the truth. In upholding the agreement the court there stated at page 27:
"This was a pledge of public faith  a promise made by state officials  and one that should not be lightly disregarded. As Judge Goldmann stated in his dissenting opinion in State v. Ashby, 81 N.J. Super. 350, 195 A.2d 635 (1963) [which case was reversed by the New Jersey Supreme Court in State v. Ashby, 43 N.J. 273, 204 A.2d 1 (1964)]:
`In this case the prosecutor * * * promised defendant that the indictments pending against him would be dismissed. The wisdom of the agreement aside, that promise constituted a pledge of public faith which should not have been repudiated. The morals of the market place are a poor guide for the sovereign's actions.' 195 A.2d at 646."
The state by way of avoidance of the agreement contends:
1. That approval of the agreement by the court was not obtained. Our scrutiny of the proceeding before the trial court, a portion of which is recorded in footnote # 1, reflects that the trial court in a thorough and conscientious way went into and explained every facet of the contract. We have not the slightest difficulty, if it be assumed that approval was necessary, in declaring that such conduct and undertaking were tantamount to an approval by the circuit judge. It is inconceivable and certainly no compliment to the system to suppose that a judge would entertain the stipulation and participate in such proceeding by obtaining the understanding and agreement of, as here, an illiterate charged with a capital offense to the terms of this proposal while disapproving the agreement. Further, it would be unconscionable and a trap of the worst sort to persuade this illiterate to forego his legal right not to take the test and to expose himself to a disaster if the results were unfavorable when  if the results were favorable  it would be said by the authorities that the judge didn't approve the agreement and the state is in no way bound by the agreement.
Criminal prosecutions are, of course, a deadly serious undertaking. They are not a *425 game and sportsmanship is perhaps not a factor. Even so, we feel that our historical ideals of fair play and the very majesty of our government command that an advantage as here reflected not be sanctioned. In parting on this question, we, while honoring the right of the state to choose its procedures and weapons of prosecution, would quite frankly question the wisdom of such contracts which tend to remove the decision to prosecute and the guilt determination from the hands of the traditional authority and delegate it to the conscience of a scientific device  a device which may not be infallible.
2. The test results were inconclusive. This posture is based upon the testimony of polygraph operators secured by the state some six months later who testified at the trial and who only examined the test charts. This contention was dispelled and answered in State v. Davis, supra, and requires no new comment except to remind that the parties agreed upon Mr. Powell as tester and he opined that the defendant had no guilty knowledge and this ends the matter so far as the state was concerned.
3. That the questions asked by the polygraph operator were insufficient to definitely establish the guilt or innocence of the defendant. We have examined the questions[4] in light of the fact that they were used and deemed sufficient by the operator who was acknowledged by the state to be an expert and thus find no merit in the state's position. Further, it does not appear that the state ever complained on this account or sought to have additional questions asked as the first time the contention appears is in the state's brief.
As a matter of complete appellate review we record that the several other points raised by the defendant have been considered in depth and found to lack merit.
For the reasons stated and on authority of State v. Davis, supra, the judgment is reversed with instructions to quash the indictment upon which it was based.
Reversed and remanded.
REED and OWEN, JJ., concur.
NOTES
[1] For instance:

T-15
(The Court) "This letter appears to be a letter which was written by Mr. Steed, who is the State Attorney. He is the prosecutor.
(Defendant) "Yes.
* * * * *
(The Court) "Now, the whole basis of this letter is that you agree to the terms of the letter, you agree to take a lie detector test?
(Defendant) "Yes."
T-18 and 19
(The Court) "Now, I want you to know this further, and I assume that you do know it, having very able counsel to represent you, this lie detector test and the results of it are not admissible in evidence ordinarily, even if you do take the test. You are agreeing to two things. You are agreeing to take the test and you are agreeing that the results of the test can be used here in Court; that is, whatever the operator says. You are agreeing to go and take the test, then you are agreeing that whatever the operator thinks, he can say here in the courtroom. Do you see the difference? Do you see the two things that you are agreeing to?
(Defendant) "Yes, I think so. That means on either side, either way it goes."
T-22 and 23
(Defense counsel) "Well, Judge, I am satisfied that the defendant doesn't understand the words `against you'. What he means is, Willie, if you are telling the truth, the State is going to dismiss the charges. Do you understand that?
(Defendant) "Yes.
(Defense counsel) "If the operator determines that you are not telling the truth, they can use that fact as evidence against you.
(Defendant) "Oh, I understand it now.
(Defense counsel) "All right. He didn't know there were any goodies attached to it. If he is telling the truth, of course, the State is going to nol. pros. the case.
(State's Attorney) "That's correct."
(Italics supplied.)
T-24 and 25
(State's Attorney) "Before we go any further, I would suggest to the Court that perhaps Willie tells what he understands about this thing.
(The Court) "You just tell us in your own words what you have agreed to.
(Defendant) "I agreed to take the polygraph test and the results of that test can be used against me. I understand that. And I also understand that the State will drop the charges if the man says I am telling the truth.
(Defense counsel) "That is fair enough.
(State's Attorney) "As long as he understands it. Do you understand you don't have to take the test?
(Defendant) "Yes.
(State's Attorney) "You want to take the test?
(Defendant) "I do."
[2] T-264

(Defense counsel) "Now, Mr. Powell, were you called upon sometime in November of 1966 by the State Attorney of the Ninth Circuit of Florida, Mr. Arthur Steed?
(Polygraph examiner) "Yes, sir, I was.
(Defense counsel) "What was the purpose and the nature of the call?
(Polygraph examiner) "Requesting a  well, there was a discussion conference on the possibility of conducting a polygraph examination on Willie James Butler."
T-265
(Defense counsel) "And were you in fact requested by the State to run a lie detector or polygraph test on the defendant?
(Polygraph examiner) "Yes, sir."
T-274
(Defense counsel) "* * * Where did you conduct the examination?
(Polygraph examiner) "All right. At the Orange County Sheriff's Department. They have a room for conducting polygraph examinations."
T-283
(Defense counsel) "* * * Were any of those questions concerning the alleged rape, or guilty knowledge of the alleged rape of Betty J. Wolford?
(Polygraph examiner) "Yes, sir."
T-286
(Defense counsel) "Now, are you able to, by looking at that graph, illustrate better to the jury your findings, your opinions and your determination of whether or not as a result of these tests Willie James Butler was telling the truth when he denied any guilty knowledge of the rape or the breaking and entering of any Wigwam Village?
(Polygraph examiner) "Yes, sir."
T-293
(Defense counsel) "All right, sir. Based upon your examination of this chart and this graph, and based upon your experience, what opinion do you have, if any, as to whether or not the defendant was telling the truth when he stated, `Yes' as to whether or not he was going to tell the truth about this incident?
(Polygraph examiner) "Well, the indication that I drew from this is that he answered the question truthfully."
T-297
(Defense counsel) "The next question is No. 33, `On August 13, 1966, just after your birth date did you break into Teepee No. 6 at Wigwam Village and force the woman in that teepee to have sexual intercourse with you?' And the answer  "
* * * * *
"The minus indicates he answered the question, `No.'"
T-299
(Polygraph examiner) "* * * In my evaluation and opinion this was indicative of truth telling.
T-299 and 300
(Defense counsel) "All right, * * * What was that question?
(Polygraph examiner) "`Did you break into any teepee at Wigwam Village and force the woman in that teepee to have sexual intercourse with you?'
(Defense counsel) "All right. And what was his response?
(Polygraph examiner) "His answer was, `No.'
(Defense counsel) "And based on the evaluation of the various indications on the graph, do you have an opinion as to whether or not when he answered no that he was telling the truth?
(Polygraph examiner) "The pattern indicates he is telling the truth."
T-301
(Defense counsel) "And based upon your evaluation of both of the charts, do you have an opinion as to whether or not Willie Butler, this defendant, denied any connection with the alleged rape of Betty Wolford at the Wigwam Village Motel in Orange County, Florida, on August 13, when he denied it, that he was telling the truth; do you have an opinion?
(Polygraph examiner) "Yes, sir.
(Defense counsel) "What is your opinion?
(Polygraph examiner) "It tends to indicate that he is telling the truth."
[3] See 21 Univ. of Miami L.Rev. 896 (1967), for an extensive analysis of the Davis case.
[4] Supra, Note 2.