**Bobby WORKMAN, Appellant,**

v.

**COMMONWEALTH of Kentucky,
Appellee.**

Supreme Court of Kentucky.

Jan. 16, 1979.

Jack Emory Farley, Public Defender, Edward C. Monahan, Asst. Public Defender, Frankfort, for appellant.

Robert F. Stephens, Atty. Gen., John W. Stewart, Asst. Atty. Gen., Frankfort, for appellee.

LUKOWSKY, Justice.

On January 13, 1975, Workman was indicted for the murder of Chaffins which occurred on May 4, 1969. His extradition from Michigan was completed on August 26, 1976. On September 9, 1976, he entered a plea of not guilty. He was tried, convicted and sentenced to life imprisonment, on what may be charitably described as far less than overwhelming evidence, on December 30, 1977. He appeals and we reverse.

On November 21, 1977, Workman filed a motion to dismiss the indictment supported by an affidavit which alleged:

"[A]n offer was made by the . . . Commonwealth . . . that if the defendant would voluntarily submit to a polygraph examination by the Kentucky State Police, and in the event that that test indicated that the defendant had no involvement in the shooting of James Chaffins, the charge would be dismissed. The defendant did submit to the examination and passed the aforementioned test, as well as a separate test conducted by Marcy Consulting Agency, Incorporated, of Dearborn, Michigan, and another

polygraph examination conducted by Sgt. Godby of the Kentucky State Police." Confirmatory copies of the reports of these examinations and their results appear in the record. The Kentucky State Police Polygraph report discloses that their tests were given on March 28, 1977, at the request of the Commonwealth's Attorney.

The Commonwealth filed no response to the motion and did not challenge the affidavit or the reports. The trial court denied the motion in an order which gave no reason for its action.

It is plain that the Commonwealth, acting through its agents who had apparent if not actual authority, entered into an agreement with Workman to abandon their prosecution of him if he passed a polygraph examination given by the Kentucky State Police. It is equally apparent that even though he took and passed such examination on March 28, 1977, the Commonwealth took no steps to fulfill its bargain as late as November 21, 1977, when Workman asked the circuit court to enforce the bargain.

The question is not whether the Commonwealth's bargain was wise or foolish. The question is whether the Commonwealth should be permitted to break its word.

■ The standards of the market place do not and should not govern the relationship between the government and a citizen. *People v. Reagan*, 395 Mich. 306, 235 N.W.2d 581, 585 (1975). "Our government is the potent, the omnipresent, teacher. For good or ill, it teaches the whole people by its example." *Olmstead v. United States*, 277 U.S. 438, 485, 48 S.Ct. 564, 575, 72 L.Ed. 944, 960 (1928) (Brandeis, J., dissenting). If the government breaks its word, it breeds contempt for integrity and good faith. It destroys the confidence of citizens in the operation of their government and invites them to disregard their obligations. That way lies anarchy. We deal here with a "pledge of public faith—a promise made by state officials—and one that should not be lightly disregarded." *State v. Davis*, Fla.App., 188 So.2d 24, 27 (1966).

■ The attorney for the Commonwealth, with the permission of the court, may dismiss an indictment prior to the submission of the case. RCr 9.64. The motion of an attorney for the Commonwealth to dismiss an indictment may be granted or denied by the judge in his discretion. *Rader v. Commonwealth*, 287 Ky. 282, 284, 152 S.W.2d 937, 938 (1941). It is axiomatic that the exercise of such discretion must be reasoned and supported by the record. *Kidd v. Commonwealth*, 255 Ky. 498, 505–06, 74 S.W.2d 944, 947 (1934); *United States v. Cowan*, C.A. 5th, 524 F.2d 504, 513–515 (1975).

■ "[N]o distinction can be taken between the government as prosecutor and the government as judge." *Olmstead v. United States*, supra at 470, 48 S.Ct. at 575 (Holmes, J., dissenting). When as here, our historical ideals of fair play and substantial justice do not permit attorneys for the Commonwealth to disregard promises and fail to perform bargains, it does not permit the judge to allow such iniquities to succeed. *Butler v. State*, Fla.App., 228 So.2d 421, 424–25, 36 A.L.R.3d 1274, 1279 (1969).

■ The record as it was constituted on November 21, 1977, disclosed no rational basis which would relieve the attorney for the Commonwealth from the performance of his bargain or justify the refusal of the trial judge to grant the motion to dismiss. We are faced with a hard choice, but in the last analysis we find it less evil that a criminal should escape punishment than that the government should be allowed to welsh on its bargain. *Olmstead v. United States*, supra at 470, 48 S.Ct. at 575 (Holmes, J., dissenting).

The judgment is reversed and the cause is remanded with directions to dismiss the indictment with prejudice.

All concur except STEPHENSON, J., who dissents and AKER, J., who did not participate in the decision of this case.

STEPHENSON, Justice, dissenting.

In my view the holding of the majority effectively nullifies the clear provisions of

RCr 9.64. For whatever purpose RCr 9.64 was adopted, it is there and requires the approval of the trial court before dismissal of an indictment. I am not aware of any authority in this jurisdiction that requires the trial court to give reasons for the exercise of discretion in refusing to dismiss an indictment, nor does the majority opinion supply any such authority. *Rader* and *Kidd,* cited in the majority opinion, do not support such a proposition. *Butler,* the Florida Court of Appeals' opinion, is so different in its factual situation it could not be applicable here. There, the trial court approved the written agreement to dismiss the indictment if the results of the polygraph test showed the defendant was telling the truth. The agreement further provided that if the results of the test inculpated the defendant such evidence could be admitted at trial. Further, Florida apparently does not have a rule comparable to RCr 9.64.

Here, the appellant does not make a showing of any prejudice to him in the trial of the case as a result of taking the polygraph test, and I can find no rational basis for forcing the trial court to accept an agreement such as was apparently made here.

I can agree with the statements about "fair play" and the Commonwealth keeping a promise. If the trial court had participated in the agreement, I would be the first to say it should be kept. However, I would hold appellant to the knowledge that the permission of the trial court was necessary before the indictment could be dismissed.

In keeping RCr 9.64 as a viable rule and in the absence of a showing of prejudice to the appellant, I would affirm the judgment.

Accordingly, I dissent.