687 So.2d 300 (1997)
STATE of Florida, Appellant,
v.
Rogel VIXAMAR, Appellee.
No. 95-3458.
District Court of Appeal of Florida, Fourth District.
January 22, 1997.
*301 Robert A. Butterworth, Attorney General, Tallahassee and John Tiedemann, Assistant Attorney General, West Palm Beach, for appellant.
Richard L. Jorandby, Public Defender, and Anthony Calvello, Assistant Public Defender, West Palm Beach, for appellee.
GROSS, Judge.
This case concerns the limitations on a court's ability to use dismissal as a sanction to enforce a negotiated disposition which did not become binding in the manner specified in Florida Rule of Criminal Procedure 3.172(f).
Vixamar was charged with aggravated battery on his former wife. At a Friday calendar call for trial, he struck a bargain with the prosecutor. Vixamar's lawyer announced the terms of the agreement:
The State has agreed to release Mr. Vixamar today, and reset it for a status check Tuesday morning at 8:30. If at that time [the prosecutor] has no witnesses, he is willing to nol-pros. And if he does, then we'll reset it for a misdemeanor plea at that point.
The following Tuesday, Vixamar and his lawyer appeared in court at 8:30 a. m. Neither the victim nor the prosecutor handling the case were present. The assistant state attorney standing in for his coworker knew very little about the case:
[The ASA]: ... I think we were supposed to locate the victim and indicate to the Court if they're [sic] available for trial. I do not have any indication in the file. I believe [the prosecutor assigned to the case] is running a little behind.
[Vixamar's attorney]: We move to dismiss.
[The Court]: Granted.
Even by 9:00 a.m., none of the other prosecutors could explain the "no shows."
Dismissal in this case was not warranted on a constitutional basis, under the rules of criminal procedure, or pursuant to case law.
The agreement between the state and defendant is best characterized as a negotiated disposition, since it did not necessarily contemplate that the defendant would enter a plea. Even if the agreement between the state and defendant amounted to a plea bargain, there was no constitutional violation. A defendant's acceptance of a prosecutor's proposed plea offer creates no constitutional right to have the bargain specifically enforced. As the United States Supreme Court observed in Mabry v. Johnson, 467 U.S. 504, 507-08, 104 S.Ct. 2543, 2546, 81 L.Ed.2d 437 (1984),
A plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest. It is the ensuing guilty plea that implicates the Constitution.
Just as there was no constitutional violation, there was no breach of any rule of criminal procedure. Florida Rule of Criminal Procedure 3.172(f) provides:
(f) Withdrawal of Plea Offer or Negotiation. No plea offer or negotiation is binding until it is accepted by the trial judge formally after making all the inquiries, advisements, and determinations required by this rule. Until that time, it may be withdrawn by either party without any necessary justification.
Assuming that this was a "negotiation" within the meaning of rule 3.172(f), it is clear that it was not accepted by the trial judge "formally" as the rule contemplates. After the defendant's attorney announced the proposed disposition, the court's only response was "[a]ll right. You have a written order on the release?" Because the negotiation in this case was not made binding in the manner set forth in rule 3.172(f), the state could have withdrawn it at any time without justification. See State v. Reasbeck, 359 So.2d 564, 565 (Fla. 4th DCA 1978). For this reason, dismissal was not an appropriate sanction when the state did not nolle prosequi at the second hearing.
Absent a constitutional or rule ground authorizing a dismissal, the only line of cases which might apply derives from State v. Davis, 188 So.2d 24 (Fla. 2d DCA), cert. *302 denied, 194 So.2d 621 (Fla.1966). See Charatz v. State, 577 So.2d 1298 (Fla.1991); State v. Upshaw, 648 So.2d 851 (Fla. 3d DCA 1995); Flaherty v. State, 367 So.2d 1111 (Fla. 3d DCA 1979); Williams v. State, 341 So.2d 214 (Fla. 2d DCA 1976); Butler v. State, 228 So.2d 421 (Fla. 4th DCA 1969). Davis involved the state's agreement with a defendant to submit to a polygraph examination by an operator selected by the parties. The bargain struck was that if the examination showed that the defendant was truthful in denying his guilt, then the state would not prosecute him; but if the examination indicated that the defendant was not truthful about his innocence, then he would enter a plea of guilty to a lesser charge. 188 So.2d at 25. Even though the polygraph operator opined that the defendant was telling the truth, the state refused to nolle prosequi the charges. The second district granted the defendant's motion to quash the indictment on the theory that the state should not be permitted to renege on a pledge of public faith:
Defendant had agreed to plead guilty to manslaughter if the test was not in his favor, but the state had agreed to dismiss the case if the results indicated defendant was telling the truth. This was a pledge of public faitha promise made by state officialsand one that should not be lightly disregarded. As Judge Goldman stated in his dissenting opinion in State v. Ashby, 81 N.J.Super. 350, 195 A.2d 635 (1963)(which case was reversed by the New Jersey Supreme Court in State v. Ashby, 43 N.J. 273, 204 A.2d 1 (1964)),
`In this case the prosecutor * * * promised defendant that the indictments pending against him would be dismissed. The wisdom of the agreement aside, that promise constituted a pledge of the public faith which should not have been repudiated. The morals of the market place are a poor guide for the sovereign's actions.' 195 A.2d at 646.
Davis, 188 So.2d at 27. This court has relied on Davis to specifically enforce the state's promise to drop criminal charges if a defendant were found to have been truthful on a polygraph exam. Butler, 228 So.2d at 424. The theoretical basis of Davis and Butler does not require approval of the trial court under rule 3.172(f) as a precondition to a defendant's entitlement to specific performance of a bargain with the state. The "pledge of public faith" occurs at the time the prosecution enters into an agreement with a defendant. A court's later approval of the deal neither enhances nor detracts from the prosecutorial obligation to uphold "our historical notions of fair play and the very majesty of our government." Butler, 228 So.2d at 424-25. The responsibility of a prosecutor to act fairly derives from the stature and function of the office. See James v. State, 305 So.2d 829 (Fla. 1st DCA 1975).
Not every prosecutorial agreement implicates a pledge of the public faith so that specific performance of a promise is justified. The unifying theme of those cases holding the state to its word is that the defendant's part of the bargain involved either substantial conduct or a serious risk of an adverse result or both. The defendant in Davis submitted to a polygraph exam and agreed to plead guilty to manslaughter if the test result was not in his favor. The defendant in Butler submitted to a polygraph, with the understanding that unfavorable test results could be introduced in evidence at his trial. The defendant in Williams placed himself at risk by acting as an informant for the police. 341 So.2d at 215. The defendant in Flaherty completed the pretrial intervention program and was not convicted of a felony during a two year period. 367 So.2d at 1112. The defendant in Upshaw successfully completed a twelve month substance abuse program. 648 So.2d at 852. The defendant in Charatz served five months of community control and obtained employment which could have continued only if a term of the plea bargain that adjudication be withheldwere to remain in force.
In this case, the acts required of the defendantthat he show up in court on a Tuesdayhardly rise to that level of performance in the line of cases following Davis so that specific performance of the state's promise is appropriate. Nor was this a case where a defendant was unfairly prejudiced by the prosecutor's conduct. Therefore, both *303 dismissal and specific performance of the negotiated disposition were improper.
Davis is an exception to the common law rule that the prosecutor controls the prosecution of a case, that the prosecutor alone has the "exclusive discretion to decide (prior to double jeopardy) whether to prosecute." State v. Brown, 416 So.2d 1258, 1259 (Fla. 4th DCA 1982); State v. Darnell, 335 So.2d 638 (Fla. 4th DCA 1976); Wilson v. Renfroe, 91 So.2d 857 (Fla.1956); see State v. Pope, 675 So.2d 165 (Fla. 3d DCA 1996). The only rule of procedure to allow a nonmerits dismissal of a criminal case is Florida Rule of Criminal Procedure 3.220(n)(1), which involves a party that "has failed to comply with an applicable discovery rule or with an order issued pursuant to an applicable discovery rule." See State v. Ryan, 513 So.2d 753, 754 (Fla. 4th DCA 1987); State v. Burnison, 438 So.2d 538 (Fla. 2d DCA 1983); State v. Oliver, 322 So.2d 638 (Fla. 3d DCA 1975). Dismissal of charges against a defendant is an extreme sanction that should be utilized with caution, only when a lesser sanction would not accomplish the same result. State v. Del Gaudio, 445 So.2d 605, 608 (Fla. 3d DCA), rev. denied, 453 So.2d 45 (Fla. 1984); Ryan, 513 So.2d at 754. The rationale for so limiting the sanction of dismissal of criminal charges "is to insure that the public's interest in having persons accused of crimes brought to trial is not sacrificed in the name of punishing a prosecutor's conduct." Del Gaudio, 445 So.2d at 608. That dismissals are rarely proper is best exemplified by State v. Jackson, 420 So.2d 320 (Fla. 4th DCA 1982). There, this court reversed a dismissal where the state had plainly used a nolle prosequi to circumvent the trial court's adverse rulings. Even though this court was sympathetic to the trial court's frustration, we held that the sanction of dismissal was improper in light of the prosecutor's exclusive discretion to decide whether a criminal case should be discontinued and in the absence of a procedural rule authorizing judicial intervention. See State v. Matos, 589 So.2d 1022 (Fla. 3d DCA 1991)(error to dismiss information where state inadvertently cancelled a deposition and defendant lost opportunity to question a material witness); State v. Conte, 516 So.2d 1115 (Fla. 2d DCA 1987)(dismissal not appropriate sanction for state's untimely filing of amended information), rev. denied, 525 So.2d 877 (Fla.1988).
Against this legal backdrop, even assuming that the trial court was authorized to enforce the disposition agreement in this case, the sanction of dismissal was excessive. The lesser sanction of ordering the prosecutor to enter a nolle prosequi, or giving the state a reasonable time to enter one, would have accomplished the desired resultto enforce the precise promise made by the prosecutor. See State v. Cohen, 662 So.2d 430 (Fla. 3d DCA 1995); State v. Briggs, 578 So.2d 901 (Fla. 4th DCA 1991). The court's dismissal went far beyond the disposition negotiated by the parties. The dismissal amounted to punishment for the prosecutor being tardy to court and for his coworkers being unprepared. No court in Florida has ever condoned dismissal on these grounds.
As this court recognized in State v. Bouma, 554 So.2d 641 (Fla. 4th DCA 1989), dismissal has more drastic consequences than nolle prosequi. If speedy trial has not run, a nolle prosequi allows charges to be refiled at a later time. Once a dismissal is entered, jeopardy attaches. A bar to future prosecution is especially significant in this type of case.
For these reasons, the trial court's dismissal of the charges should be reversed.
DELL, J., concurs.
FARMER, J., dissents with opinion.
FARMER, Judge, dissenting.
I would affirm the trial judge's dismissal of this case. The order of dismissal sets forth the factual basis for the dismissal as follows.
"The Defendant was scheduled for Calendar Call September 1, 1995. The Defendant and counsel were present and announced ready for trial, but indicated that the State had not produced the victim for deposition.
"The State acknowledged that it had some difficulty in maintaining contact with the victim. Whereupon the Assistant State Attorney ... and the Assistant Public *304 Defender ... agreed in open Court that the State would produce the victim in Court Tuesday, September 5, 1995, for trial/deposition at 8:30 a.m., and if they were unable to do so, the State would enter a nol prosse.

"On Tuesday, September 5, 1995, the Defendant and his counsel appeared in Court at 8:30 a.m. as directed and agreed. Neither the victim nor [the ASA] were present. By 9:00 a.m. none of the other [ASAs] had any explanation for the `no shows', nor were they willing to abide by [the assigned ASA's] agreement, despite the Court's assurance that such an agreement had been made.
"The Defendant's counsel made an ore tenus Motion to Dismiss upon the State's breach of agreement." [e.o.]
On appeal, the state argues that the trial court should have imposed a sanction less severe than dismissal, relying on State v. Bouma, 554 So.2d 641 (Fla. 4th DCA 1989), State v. Bryant, 549 So.2d 1155 (Fla. 3d DCA 1989), State v. Rojas, 508 So.2d 449 (Fla. 3d DCA 1987), and State v. Jackson, 436 So.2d 985 (Fla. 3d DCA 1983). Its argument is, essentially, that the judge should have afforded the state a continuance to produce the witness and the ASA assigned to prosecute the case. I find these cases distinguishable.
In Bouma, the trial court dismissed for failure to prosecute when the state's witness failed to appear for a pretrial deposition. The other cases are indistinguishable from Bouma. The reason for reversing the dismissal in Bouma is evident from the following:
"Whether the dismissal was a sanction for failure to appear for a deposition or based on the conclusion that the state had no reasonable expectation of finding the witness and prosecuting the case, the trial court infringed upon the state's territory. The decision to prosecute is a determination to be made by the state, not the trial court. State v. Bryant, 549 So.2d 1155 (Fla. 3d DCA 1989); State v. Brown, 416 So.2d 1258 (Fla. 4th DCA 1982)."
554 So.2d at 642. The state had not agreed in Bouma as to the consequences of a failure to produce the witness for the deposition. Hence the state had not exercised its discretion to nol prosse if the witness proved unavailable. Its only agreement was to produce the witness for the deposition.
In contrast, the state made an express agreement in the present case with the defendant in open court at a calendar call that the state would either produce its witness within 5 days for trial or nol prosse the case. When the state was unable to produce the witness, instead of honoring its agreement, it simply refused to perform. Because the state had already exercised its discretion to terminate the prosecution of the case if the witness did not appear for trial on the agreed date and time, the trial judge properly exercised his discretion and dismissed the case.
Unlike Bouma, the dismissal in this case did not infringe on prosecution discretion. As I have just shown, the prosecution had actually exercised its discretion to end the case when it agreed to nol prosse if it could not produce the key witness at the appointed time. Ordering a dismissal on account of the breach of the agreement by the prosecution was clearly not for failure to prosecute but instead for breach of agreementan agreement, I might add, that resulted in a continuance to give the state one last opportunity to produce the witness or nol prosse the case. The state does not explain why it should be given another continuance to perform an agreement that it had already breached.
In sum, I cannot say that the trial judge abused his discretion in the same way that the judges did in Bouma and the cases cited. I would therefore affirm.