DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**RICHARD WALKER,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D14-3477

[April 20, 2016]

Appeal and cross-appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Michael Usan, Judge; L.T. Case No. 13008068CF10A.

Carey Haughwout, Public Defender, and Virginia Murphy, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Luke R. Napodano, Assistant Attorney General, West Palm Beach, for appellee.

WARNER, J.

Appellant/cross-appellee Richard Walker timely appeals his sentence, arguing that the trial court imposed a vindictive sentence, higher than the sentence offered in plea negotiations in which the court participated. The State cross-appeals, arguing that the trial court erred by dismissing one of appellant's charges at sentencing. We affirm appellant's sentence, concluding that the court did not depart from its neutral role in the sentencing discussions, and the slightly higher sentence imposed after trial was not vindictive. We reverse the trial court's vacation of one of appellant's convictions, as the court was unauthorized to do so after trial.

Appellant was charged by information with three counts: (1) Aggravated battery with great bodily harm, to wit, hearing loss requiring surgery, a second degree felony and a violation of section 784.041, Florida Statutes (2011); (2) Battery on a public transit employee, the victim in count I, a third degree felony and a violation of sections 784.03(1), 784.07(1)(e), and 784.07(2)(b), Florida Statutes (2011); and (3) Criminal mischief with under

$200 of damage to a motor vehicle, a second degree misdemeanor and a violation of section 806.13(1)(a) and (b)(1), Florida Statutes (2011).

The day before trial, the State offered appellant a plea deal of five years of probation, with adjudication, and $200 in restitution. The State also noted that if appellant went to trial, he would be facing a mandatory minimum of two years in prison, given the victim injury points. The State revoked the offer at the beginning of the trial. The court conducted a colloquy with appellant:

> [I]t's my understanding that the State has made you what we call a below guidelines offer to resolve the case. The guidelines are the limits of my discretion. So if the jury should find you guilty, then the minimum sentence that I can impose would be 22 month Florida State Prison up to ten years and 60 days.

The court ascertained that appellant had discussed the offer with his counsel and still wanted to go forward with the trial.

The State then presented its case. The victim testified to the attack and his injuries. Two doctors confirmed the victim's injuries. At the close of the case, the defense moved for a judgment of acquittal, which was denied.

Appellant then informed the court that he wished to testify, and the court conducted a colloquy. Appellant requested time to speak with counsel, and asked the court what it "would be willing to offer him at this point in the trial?" The State noted that it had originally offered five years of probation, but since then the victim had requested ten years in prison. The following exchange took place:

> COURT: Well, what's your position now? I mean, we've gone through this again. But, again, I'm interested in resolving cases. There's an element of the unknown out there, which we don't know. And a plea gives a definite resolution to the case, that's why I'm in favor of them. Because everyone knows what's going to happen then as opposed to not leaving it to people we don't know.
>
> STATE: After hearing the doctor's testimony that [the victim] was put through something that he is going to be living with for the rest of his life, there are both opportunities for the Defendant to walk away.

I feel, because of the prior Domestic Battery, the Domestic Violence Battery, there is certainly an anger issue present that needs to be addressed. It would be my position that the five years stand. I would advocate for the conviction in this case given the facts. I would also request or we would favor an anger management course continuously through probation. No return to the address.

COURT: I don't know if it's continuous through. But I would certainly be in favor of doing some kind of program on that.

. . . .

COURT: I would be inclined to do an adjudication, five years probation. Then 26 week anger management course. I know he probably prefers not to have the adjudication. I've got to tell you, if the jury convicts him, and it would be pretty easy for them to convince the Court those victim injury points are present. And that puts us in a whole different area.

. . . .

DEFENSE: You're not willing to consider the withhold?

COURT: I think under the circumstances he's looking at an adjudication on this.

. . . .

DEFENSE: Reject the offer at this time.

COURT: Okay. Well, let's put him on the record to make sure that there's no question about that. You understand that an offer was extended. That's similar to the offer before, the difference is that at this point it would be an adjudication, five years probation, anger management course. That's the offer that's been made. You understand that?

APPELLANT: Yes, sir.

COURT: And you wish to reject that offer and go forward?

APPELLANT: Yes, sir.

3

COURT: And you understand that should the jury come back with a conviction, that you score. They have explained to you about the Score Sheet and how that works.

Because, essentially, you get a certain amount of points, depending on the offense, certain amount of points prior. You don't have any points so none added on to that. Then there's some victim injury points that can get assessed on there.

With those points, if the jury comes back as charged on Count I, then the bottom of the guidelines would be what?

STATE: 22.35 months.

COURT: About two years in Florida State Prison. And that could be followed by probation as well. So you understand when something is at the bottom of the guidelines, that means the bottom of my discretion. That even if you were like my own son, that's the best I can do. You understand that?

APPELLANT: Yes, sir.

COURT: And you wish to go forward and reject the offer that includes no incarceration?

. . . .

APPELLANT: Yes, sir.

Appellant then testified, claiming that the victim was the aggressor in the incident. Appellant denied hitting or kicking the victim. The defense then rested and moved for a second judgment of acquittal, which was denied.

Appellant was found guilty as charged of battery with great bodily harm (count I) and battery of a public transit employee (count II). He was found not guilty of criminal mischief (count III). The court began to pronounce an adjudication as to counts I and II, but stopped and stated, "We'll wait until sentencing to deal with that. State will make an election as to what count they want to go forward on, which count you will then dispose of." The State responded, "Okay." The court then adjudged appellant not guilty of the criminal mischief charge.

4

At sentencing, appellant disputed having convictions on both counts I and II.  Defense counsel maintained that prior to trial, the prosecutor told the defense that she would enter a nolle prosequi on count II if appellant were convicted of both counts I and II.  While the prosecutor conceded that she had made the statement, she maintained that she did so because she erred in concluding that the two convictions would violate double jeopardy.  The court then acknowledged that the two convictions did not meet the *Blockburger*[1] test and would not constitute double jeopardy, but nevertheless decided to hold the State to its representations made prior to trial.  It then asked the State to elect on which charge it wanted appellant sentenced.  While the State elected to have appellant sentenced on count I, it objected to the court not sentencing him on both and asked that count II be held in "abeyance" instead of being dismissed.

The State requested 51.6 months in prison under the severe injury guidelines, plus eight months of probation, with special conditions and restitution.  Appellant scored a recommended sentence of 19.5 months in prison, with victim injury categorized as moderate.  Appellant moved for a downward departure from the sentencing guidelines, arguing that this was an isolated incident that occurred while he was separated from his wife and living out of his car, and the victim did not believe that appellant was actually a transit employee.  The court then adjudged appellant guilty on count I and sentenced him to thirty months in prison, followed by eighteen months of probation.  The court set aside his conviction on count II.

Appellant now appeals his sentence, and the State cross-appeals the vacation of appellant's conviction on count II.

Appellant claims that his thirty-month sentence for aggravated battery is vindictive because it exceeds the sentence offered during plea negotiations in which the court participated.  "Whether a defendant's sentence is vindictive is a question of law subject to *de novo* review." *Vardaman v. State*, 63 So. 3d 925, 926 (Fla. 4th DCA 2011).  Moreover, "imposition of a vindictive sentence is fundamental error that may be raised for the first time on appeal." *Mendez v. State*, 28 So. 3d 948, 950 (Fla. 2d DCA 2010).  Thus, although appellant did not object to the sentence at the time it was imposed, he may still raise this argument on appeal.

---

[1] *Blockburger v. United States*, 284 U.S. 299 (1932) (codified in § 775.021(4), Fla. Stat. (2011)).

5

Where a defendant claims that a sentence is vindictive, the defendant has the initial burden of demonstrating vindictiveness. *Vardaman*, 63 So. 3d at 927. If this burden is met, it creates a rebuttable presumption of vindictiveness, which the State must then rebut. *Id.* However, "[w]here the totality of the circumstances does not give rise to a presumption of vindictiveness, the burden remains upon the defendant to prove actual vindictiveness." *Wilson v. State*, 845 So. 2d 142, 156 n.8 (Fla. 2003).

"When there is judicial participation in plea negotiations, followed by a harsher sentence, the supreme court has adopted a totality of the circumstances approach in determining whether a presumption of vindictiveness arises." *Mounds v. State*, 849 So. 2d 1170, 1171 (Fla. 4th DCA 2003). Factors to consider in determining whether a presumption of vindictiveness arises include the following:

> (1) whether the trial judge initiated the plea discussions with the defendant . . . ; (2) whether the trial judge, through his or her comments on the record, appears to have departed from his or her role as an impartial arbiter by either urging the defendant to accept a plea, or by implying or stating that the sentence imposed would hinge on future procedural choices, such as exercising the right to trial; (3) the disparity between the plea offer and the ultimate sentence imposed; and (4) the lack of any facts on the record that explain the reason for the increased sentence other than that the defendant exercised his or her right to a trial or hearing.

*Wilson*, 845 So. 2d at 156 (footnotes omitted).

When analyzing these factors as applied to this case, no presumption of vindictiveness arises. As to the first factor, the trial court did not initiate the plea discussions either prior to trial or during the discussion at trial. Instead, appellant did so through defense counsel during the court's colloquy on his decision to testify.

As to the second factor, in its discussion of the plea offer, the trial court did not depart from the role of a neutral arbiter. The trial court merely indicated that resolution by plea would give certainty to appellant. The judge did not imply that he was giving appellant a "break" through the plea offer, as in *Vardaman*, 63 So. 3d at 929. The court's comments never went beyond explaining the process and advising appellant of his exposure at sentencing.

6

As to the third factor, there was indeed disparity between the sentence of thirty months in prison and the initial offer of five years of probation. However, appellant's points under the sentencing guidelines required that the court impose a minimum sentence, without downward departure, of twenty-two months in prison, if convicted. The court's sentence of thirty months in prison was also well within the statutory maximum of fifteen years for the crime. Although there is a substantial disparity between probation and thirty months in prison, when measured instead from what the minimum sentence would be upon the jury's verdict of guilty, we do not consider this to be a significantly increased sentence.

Finally, as to the last factor, the testimony from the victim and his doctors at sentencing, although it largely mirrored their trial testimony, presented a more nuanced discussion of the victim's injuries and focused on increasing appellant's sentence, rather than merely obtaining a guilty jury verdict. In addition, the State requested a sentence of 51.5 months in state prison after the victim supported a sentence of ten years. Thus, there were additional factors present influencing the court's exercise of its discretion in sentencing.

Appellant further argues that the trial court misrepresented its ability to downwardly depart at sentencing, again increasing the perceived risk of continuing to trial, citing the court's statement that, "[Y]ou understand when something is at the bottom of the guidelines, that means the bottom of my discretion. That even if you were like my own son, that's the best I can do." However, this was not a misrepresentation of the court's ability:

> The lowest permissible sentence provided by calculations from the total sentence points pursuant to s. 921.0024(2) is assumed to be the lowest appropriate sentence for the offender being sentenced. A departure sentence is prohibited unless there are mitigating circumstances or factors present as provided in s. 921.0026 which reasonably justify a departure.

§ 921.00265(1), Fla. Stat. (2011). The court's statements appropriately reflected its inability to go below the guidelines without circumstances justifying a departure. And there was no request prior to sentencing that the court consider a downward departure. The court was again acting within its neutral role of providing information to appellant. *See State v. Warner*, 762 So. 2d 507, 514 (Fla. 2000).

In sum, we conclude that not only did no presumption of vindictiveness arise in this case, but also that the trial court conducted the plea

discussions with appropriate regard to maintaining its neutrality throughout the proceedings. Indeed, the court is to be commended for *not* overstepping its bounds in the plea discussions, yet providing appellant with as much information as possible on which to weigh his decision with regard to the offer. We thus find no error in the trial court's sentence.

As to the cross-appeal, the State argues that the trial court erred in setting aside appellant's conviction on count II at sentencing because nothing authorized it to do so. The trial court vacated the conviction because the State had informed appellant prior to trial that it would drop one of the charges, rather than have him convicted of both. At sentencing, however, the State explained that it had made an error in believing that double jeopardy would prevent convictions on both crimes. Therefore, it contended that it should not be held to its pretrial statements. Nevertheless, the trial court concluded that fundamental fairness required vacation of the conviction.

Because there was no binding agreement, the State argues that its statement was not a "pledge of public faith," as explained in *State v. Vixamar*, 687 So. 2d 300, 302 (Fla. 4th DCA 1997). In *Vixamar*, the defendant struck a bargain with the State in which the State agreed to file a nolle prosequi to a charge if the State was unable to produce witnesses at a status check the following week. *Id.* at 301. At the status check, a different prosecutor appeared without any witnesses, so the trial court granted the defendant's motion to dismiss. *Id.* The State appealed, and this Court reversed the dismissal of the charges:

> Not every prosecutorial agreement implicates a pledge of the public faith so that specific performance of a promise is justified. The unifying theme of those cases holding the state to its word is that the defendant's part of the bargain involved either substantial conduct or a serious risk of an adverse result or both.

*Id.* at 302. This Court went on to list cases in which specific performance on the State's promise was merited:

> The defendant in [*State v. Davis*, 188 So. 2d 24 (Fla. 2d DCA 1966),] submitted to a polygraph exam and agreed to plead guilty to manslaughter if the test result was not in his favor. The defendant in [*Butler v. State*, 228 So. 2d 421 (Fla. 4th DCA 1969),] submitted to a polygraph, with the understanding that unfavorable test results could be introduced in evidence at his trial. The defendant in [*Williams v. State*, 341 So. 2d 214 (Fla.

8

2d DCA 1976),] placed himself at risk by acting as an informant for the police. 341 So. 2d at 215. The defendant in [*Flaherty v. State*, 367 So. 2d 1111 (Fla. 3d DCA 1979),] completed the pretrial intervention program and was not convicted of a felony during a two year period. 367 So. 2d at 1112. The defendant in [*State v. Upshaw*, 648 So. 2d 851 (Fla. 3d DCA 1995),] successfully completed a twelve month substance abuse program. 648 So. 2d at 852. The defendant in [*Charatz v. State*, 577 So. 2d 1298 (Fla. 1991),] served five months of community control and obtained employment which could have continued only if a term of the plea bargain—that adjudication be withheld—were to remain in force.

*Id.* at 302. Comparing these cases to the facts in *Vixamar*, this Court found that the State had not made a pledge of public faith:

[T]he acts required of the defendant—that he show up in court on a Tuesday—hardly rise to that level of performance in the line of cases following *Davis* so that specific performance of the state's promise is appropriate. Nor was this a case where a defendant was unfairly prejudiced by the prosecutor's conduct. Therefore, both dismissal and specific performance of the negotiated disposition were improper.

*Id.* at 302-03. We also found that, even assuming the trial court was authorized to enforce the disposition agreement, the sanction of dismissal was excessive, as the lesser sanction of ordering the State to enter a nolle prosequi, or giving it reasonable time to do so, also would have accomplished the desired result of enforcing the promise made by the prosecutor. *Id.* at 303 (citing *State v. Cohen*, 662 So. 2d 430 (Fla. 3d DCA 1995); *State v. Briggs*, 578 So. 2d 901 (Fla. 4th DCA 1991)). Therefore, "[t]he court's dismissal went far beyond the disposition negotiated by the parties." *Id.*

*Vixamar* supports the State's position. The State's assertion that it would drop a charge was not part of any agreement with appellant. Appellant concedes that the only prejudice to him was that he considered it when deciding to go to trial; he did not actually agree to any conditions in return for the State's dismissal. There was no pledge of public faith because there was no bargain on which such a pledge must be based. Thus, specific performance of the State's statement that it would drop the charge was not required, and the trial court erred by requiring such performance.

9

Appellant argues that the trial court's decision to set aside the conviction at sentencing was supported by promissory estoppel, as the State's promise induced him to go to trial to his detriment. The State counters that it had stated that it would drop the charge because the two charges were barred by double jeopardy, a mistaken statement of the law. "Generally stated, promissory estoppel is '[t]he principle that a promise made without consideration may nonetheless be enforced to prevent injustice if the promisor should have reasonably expected the promisee to rely on the promise and if the promisee did actually rely on the promise to his or her detriment.'" *DK Arena, Inc. v. EB Acquisitions I, LLC*, 112 So. 3d 85, 93 (Fla. 2013) (quoting Black's Law Dictionary 631 (9th ed. 2009)). However, "a governmental entity may not be estopped through mistaken statements of the law . . . ." *Branca v. City of Miramar*, 634 So. 2d 604, 606 (Fla. 1994). Thus, promissory estoppel does not serve to require that the charges be dismissed. Because the trial court was not authorized to vacate the conviction, we reverse the dismissal of the charge.

For the foregoing reasons, we hold that the sentence imposed by the trial court was not vindictive, but the court erred in dismissing the count II at sentencing. We reverse the dismissal and remand for reinstatement of the charge and for further proceedings thereon.

CIKLIN, C.J., and KLINGENSMITH, J., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***