Ranzle Lee **GOODLET**, Appellant,

v.

**COMMONWEALTH of Kentucky,** Appellee.

**No. 91–CA–544–MR.**

Court of Appeals of Kentucky.

Feb. 21, 1992.

---

Paul J. Neel, Jr., Appellate Public Advocate, Louisville, for appellant.

---

Chris Gorman, Atty. Gen., Joseph R. Johnson, Asst. Atty. Gen., Crim. Appellate Div., Frankfort, for appellee.

Before HOWERTON, HUDDLESTON and McDONALD, JJ.

McDONALD, Judge.

In 1985 the appellant, Ranzle Goodlet, was indicted on two counts of criminal possession of a forged instrument and of being a first-degree persistent felony offender. Goodlet attempted to have the charges dismissed because of a bargain he made with a police officer in which the officer agreed that the charges would be dropped if Goodlet took and passed a polygraph examination. Goodlet passed the polygraph and a handwriting test as well, but was prosecuted anyway. The motion to dismiss was denied. Goodlet was tried and convicted, and sentenced to serve twenty (20) years in prison.

Goodlet appealed to the Kentucky Supreme Court. In an opinion rendered on March 20, 1986, and designated not to be published, Goodlet's sentence was affirmed. Noting that there was no evidence that "the prosecutor's office was involved in the alleged bargain," the court held:

> Goodlet is not entitled to a dismissal of the indictment because Workman[1] does not apply to a nonprosecution promise made by a police officer acting without the authority of the prosecutor. No actual or apparent authority to bind the state exists in such a situation.

Goodlet subsequently sought relief from the judgment in state court via RCr 11.42, alleging ineffective assistance of trial counsel. This motion was denied and that ruling was upheld on appeal to this court on November 4, 1988.[2] Discretionary review of that decision was sought but denied on March 29, 1989. Goodlet also sought relief in federal district court but again met with no success.

On December 16, 1988, after this court's ruling on Goodlet's appeal from the judgment on the RCr 11.42 motion, but before the Supreme Court's denial of discretionary review, this Court rendered an opinion, also unpublished, in the case of Johns v. Commonwealth.[3] The issue in Johns was identical to that raised by Goodlet in his original appeal to the Supreme Court. Fortunately for Mr. Johns this Court, which, of course, did not have benefit of the Supreme Court's interpretation of the Workman case set out in its unpublished Goodlet opinion, reached a markedly different result. We held that where a police officer and sheriff had made an agreement with an accused and broke it, even where there was no hint that the prosecutor was involved or even aware of the promise, the accused was entitled, under the authority in Workman v. Commonwealth, supra, to have the agreement honored. In vacating Johns' conviction, this Court reasoned that the state police officer involved was "the direct arm of the Commonwealth," and that the county sheriff "also derives his authority from the state." While Workman specifically concerned the conduct of a prosecutor, this Court did not believe the holding to be necessarily limited to promises made by prosecutors, but instead should apply to other government agents with apparent authority to make such agreements.[4]

Time passed and somehow Goodlet came to learn about the unpublished Johns opinion. In April, 1989, he moved, pro se, for relief pursuant to CR 60.02(f). As grounds for seeking this relief, Goodlet alleged that there had been a "substantial change" in the interpretation of the holding in Workman, supra. The trial court, in denying

1. Workman v. Commonwealth, Ky., 580 S.W.2d 206 (1979).

2. Goodlet v. Commonwealth, 87–CA–2722–MR, J. Combs, presiding; Howerton and McDonald, associate judges.

3. Johns v. Commonwealth, 88–CA–366–MR. The opinion was authored by J. Lester, and was concurred in by Judges Reynolds and West.

4. Interestingly, the Commonwealth, a party to Goodlet's direct appeal and thereby aware of the Supreme Court's interpretation of Workman, did not seek discretionary review of the contrary decision in Johns v. Commonwealth.

Goodlet relief, ruled that Goodlet had "not demonstrate[d] that miscarriage of justice has or will occur," that Goodlet "has had his day in court and has exhausted the appellate process," and that CR 60.02 was simply not an appropriate vehicle to rehash an argument disposed of in the Commonwealth's favor in the direct appeal.

In his brief in this appeal, Goodlet assails the practice of both Courts in rendering unpublished opinions and argues that, if we had published the 1988 *Johns* opinion, "he would have a cognizable claim for relief" under CR 60.02(3).[5] Goodlet contends that the use of unpublished opinions, coupled with CR 76.28(4)(c),[6] which precludes one's use of unpublished opinions as authority, results in arbitrary and inconsistent decisions amounting to the deprivation of due process and equal protection. Goodlet claims, in addition to violation of his rights under Section 2 of our Kentucky Constitution and the Fourteenth Amendment to the United States Constitution, that the appellate courts of this state "are granted a free reign to make decisions in any particular case on a purely *ad hoc* basis."

Goodlet is not the first to voice disenchantment with the no-citation rule. In his article, "On Unpublished Opinions" 73 Ky. L.J. 145, Professor Render discussed the widespread perception of litigants and members of the bar that the rule is used by the appellate courts as "a rug under which judges sweep whatever they wish never to see the light of day." *Id.* at p. 164. In suggesting the abolition of the rule, the professor pointed out that it is "difficult, if not impossible, to reconcile inconsistent cases." Indeed, it is difficult, if not impossible, to even identify the inconsistent resolution of issues as neither appellate court has any internal index of unpublished cases or any mechanism to retrieve cases according to the legal issues involved. Certainly the vast majority of cases in this Court and those heard as a matter of right by the Kentucky Supreme Court are resolved in unpublished opinions.[7] Goodlet is absolutely correct that the same issue under similar facts can be decided in entirely different ways with no one being the wiser.[8]

The Commonwealth stays away from the constitutional debate about the use of unpublished opinions and relies on *Gross v. Commonwealth*, Ky., 648 S.W.2d 853 (1983), and the doctrine of *res judicata.* Assuming for purposes of argument that Goodlet could proceed under CR 60.02, it is clear that even if the *Johns* opinion had been published, it would have no legal effect on a final (or unfinal) decision of our Supreme Court. Under our court system we are required to follow the precedent established by the state's highest court. Clearly nothing we do is binding on the court of last resort, much less capable of supporting a collateral attack on a final ruling of that body. And even if the Supreme Court should render a published opinion adopting an interpretation of the *Workman* case different from that in its affirmance of the appellant's case, it would not necessarily have to give its holding retrospective application.

---

5. This rule provides in pertinent part: "On motion, a Court may, upon such terms as are just, relieve a party or his legal representative from its final judgment, order or proceeding upon the following grounds: ... (3) ... it is no longer equitable that the judgment should have prospective application; ...."

6. CR 76.28(4)(c) reads: Opinions that are not to be published shall not be cited or used as authority in any other case in any court of this state.

7. Our Supreme Court has never honored the statutory mandate that *all* its opinions be published. KRS 21A.070.

8. This criticism is not directed, as Judge Howerton construes it to be in his concurring opinion, at the courts' failure to publish all cases. It is the use of the rule prohibiting the citation of non-published cases that allows the courts to render inconsistent decisions. While Judge Howerton is correct that the factual details of the bargains made by both Goodlet and Johns are quite different, the resolution of each appeal hinged on the same legal issue, *i.e.,* the extent of the *Workman* holding, *supra,* to police officers. Undeniably, that legal issue was decided inconsistently by the two courts. Finally, we fear that the perception that unpublished opinions are given short shrift will not be diminished by Judge Howerton's comments that published opinions take more time and effort.

It would be chimerical to deny that the no-citation rule allows one to manipulate the appellate system so as to effect a particular result. However, while the appellant has brought to light a debate of epistemological significance bearing on the integrity of the court system,[9] he has not, in our opinion, demonstrated how the rule has caused him to be deprived of any constitutionally guaranteed rights.

Accordingly, the judgment of the Fayette Circuit Court is affirmed.

HUDDLESTON, Judge, concurs.

HOWERTON, Judge, concurring in result by separate opinion.

HOWERTON, Judge, concurring.

I concur with the result affirming the Fayette Circuit Court's denial of Goodlet's CR 60.02 motion. However, I do not concur with the criticism of the Kentucky Supreme Court and Court of Appeals' publication policies. While we are often criticized for not publishing all opinions, or at least more opinions, I believe we would be criticized more if we published everything. Many critics fail to appreciate the extra cost to the bench and expense to the bar which would result. The benefits from more printed material will not offset the detriments of such a change.

In my opinion, our present policy concerning publication is adequate. If there is any problem, it results from the way the policy is applied by the panel or the court which produced the opinion. The guidelines for the Court of Appeals allow that we recommend publication if the opinion:

(1) Establishes a new rule of law, alters or modifies an existing rule, or applies an established rule to a novel fact situation;

(2) Involves an issue of continuing public interest;

(3) Involves an issue of continuing interest to the state judiciary and the practicing bar;

(4) Criticizes existing law;

(5) Resolves an apparent conflict of authority.

There is absolutely no reason for publishing every decision by an appellate court. Most cases involve legal questions which have been decided several times before, and the new opinion will add little or nothing to the law. Frequently, an appeal can be disposed of simply and briefly by indicating that a previous decision is dispositive of the new appeal.

It takes considerably more time and effort to produce an opinion for publication. In published opinions, the facts are extremely important and must be recited extensively, for it is on the basis of the facts that distinctions can be made in future decisions. It is not necessary to write such an extensive opinion when it is written primarily for the litigants and their respective counsel. If we adopted a rule that all opinions must be published, the additional workload would require several more appellate judges, unless we wrote and published the abbreviated opinions, which would only increase the publication expenses.

Publishing all opinions will not solve every problem. It should help avoid some inconsistencies, but it would not have helped Goodlet. Publishing his would not have freed him. In his case, the court refused to extend *Workman v. Commonwealth,* Ky., 580 S.W.2d 206 (1979), which involved an offer by a prosecutor, to Goodlet's "deal" which was an offer by a policeman. Clearly, our Supreme Court had no good reason to require the trial court to honor a statement by a policeman that Goodlet would not be prosecuted, if he took a polygraph test and passed it. What did Goodlet have to lose? If he took the test and failed it, that information could not be used against him, nor could the fact that he passed the test be used to acquit him.

---

**9.** The debate is not only one of local interest, but is one getting intense scrutiny in the legal community in other states and by those who practice in the federal system. *See Matter of the Amendment of Section (Rule) 809.23(3), Stats.,* 155 Wis.2d 832, 456 N.W.2d 783, 785, n. 3 (1990); Weaver, *The Precedential Value of Unpublished Judicial Opinions,* 39 Mercer L.Rev. 447 (1988); and Reynolds and Richman, *The Non–Precedential Precedent–Limited Publication and No–Citation Rules in the United States Court of Appeals,* 78 Colum.L.Rev. 1167 (1978).

*Johns v. Commonwealth*, 88–CA–366–MR, would possibly have reached a different result had *Goodlet* been published, but maybe not. The facts in the two cases were very different. Johns made a "deal" to help the police. He put himself at great risk by allowing himself to be "wired" for recording and then visiting an inmate in a jail to obtain information. This exceptional situation deserved more approval than did Goodlet's. The Commonwealth did not seek review of the reversal of Johns' conviction. Although the legal principle in these cases seems to be that only a prosecutor can make binding agreements on whether to prosecute, it may be that true justice was done in the *Johns* case, and the prosecutor did not want to push the issue any further. There may also have been good reason why no one wanted the *Johns* opinion published.

Cases differ, distinctions must be made, and precedents are broadened, narrowed, and sometimes overruled. Many decisions should be published, but many need not be. It is not likely that a claim of discrimination based on a failure to publish an opinion will ever be an acceptable reason to set aside a conviction on the ground of a denial of due process.

Goodlet has presented a novel argument, but to use an old cliche, "that dog won't hunt." The judgment of the Fayette Circuit Court must be affirmed.