RENDERED:  JANUARY 15, 2021; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1770-MR


LEGACY HEALTH SERVICES, INC.;                                    APPELLANTS
CAMBRIDGE PLACE GROUP, LLC
D/B/A CAMBRIDGE PLACE; AND
CAMBRIDGE PLACE PROPERTIES,
LLC



                          APPEAL FROM FAYETTE CIRCUIT COURT
v.            HONORABLE KIMBERLY N. BUNNELL, JUDGE
                          ACTION NO. 15-CI-01838



CHRISTOPHER JACKSON, III, AS
ADMINISTRATOR OF THE ESTATE
OF CHRISTINE JACKSON,
DECEASED                                                              APPELLEE



OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE:  ACREE, KRAMER, AND TAYLOR, JUDGES.

ACREE, JUDGE:  Legacy Health Services, Inc., and Cambridge Place Group,

LLC d/b/a Cambridge Place, and Cambridge Place Properties, LLC ("Cambridge")

appeal from an order of the Fayette Circuit Court denying its motion to compel

arbitration of medical malpractice claims brought by Christopher Jackson, III, as guardian for his mother, Christine. Cambridge argues Jackson, as Christine's court-appointed guardian, had the authority to enter into an arbitration agreement on her behalf, and the circuit court erred in finding otherwise. After our careful review and consideration of applicable law, we reverse and remand for additional proceedings.

## BACKGROUND

In December 2011, after adjudicating Christine wholly disabled, the Fayette District Court appointed Jackson as her legal guardian.[1] The order of appointment did not contain any limitations on Jackson's authority. Additionally, in accordance with KRS[2] 387.580(3)(c), the order denied Christine the right to vote in future election contests. (Trial Record (T.R.) at 204.)

Three years later, Jackson agreed with Cambridge, a long-term care facility, that his mother would reside there. As part of the admissions process, Jackson, in his capacity as Christine's guardian, signed a voluntary alternative dispute resolution agreement as his mother's guardian. The agreement required "[a]ny and all claims or controversies arising out of or in any way relating to [the]

---

[1] *See In re: Christine Jackson*, 99-H-00125-011 (Fayette District Court December 20, 2011).

[2] Kentucky Revised Statutes.

Agreement or [his mother's] stay at the [Cambridge] [f]acility . . . [to] be submitted to alternative dispute resolution as described in the Agreement."

Jackson remained Christine's guardian until her death on January 27, 2015. He then filed a medical negligence lawsuit against Cambridge on May 18, 2015. Cambridge moved the circuit court to compel arbitration. The circuit court held oral arguments on the motion in November 2015, but entered an order holding the case in abeyance. The circuit court was waiting for the Kentucky Supreme Court to decide whether to grant discretionary review of this Court's opinion in *LP Pikeville, LLC v. Wright*, No. 2013-CA-000959-MR, 2014 WL 1345293 (Ky. App. Apr. 4, 2014) (*Wright I*).

The circuit court's decision to abate the case is understandable. This Court had designated *Wright I* for publication because it addressed, as a matter of first impression, the authority of a guardian appointed pursuant to KRS Chapter 387 to legally obligate his ward to resolve disputes by arbitration. But the wait for the Supreme Court would be long and disappointing.

That Court granted discretionary review in March of 2016. Pursuant to the automatic rule regarding publication in CR[3] 76.28(4)(a),[4] *Wright I* was

---

[3] Kentucky Rules of Civil Procedure.

[4] CR 76.28(4)(a) says: "Upon entry of an order of the Supreme Court granting a motion for discretionary review the opinion of the Court of Appeals shall not be published, unless otherwise ordered by the Supreme Court."

ordered to be unpublished, preventing the Court of Appeals opinion from becoming precedent. The circuit court and the parties would have to wait until the Supreme Court itself addressed the novel issue, and then only if it decided to publish its own opinion.

The parties briefed the Supreme Court case of *Wright v. LP Pikeville, LLC*, No. 2014-SC-0238-DG (Ky. Feb. 20, 2019) (*Wright II*) and the case was submitted for decision on August 12, 2016. However, before the Supreme Court rendered an opinion, the parties in *Wright II* settled the case and filed a joint motion to dismiss. In February 2019, the Supreme Court ordered the case dismissed but chose not to order *Wright I* published,[5] notwithstanding that the case had addressed an issue of first impression. The circuit court in the instant case was left to decide Cambridge's motion to compel arbitration without the precedent for which it waited four years.

As the circuit court correctly noted, *Wright I* "is not binding on this Court." It entered an order denying Cambridge's motion, finding Jackson lacked authority to bind his ward to an arbitration agreement. This appeal followed.

## STANDARD OF REVIEW

A party seeking to compel arbitration has the initial burden of establishing the existence of a valid agreement to arbitrate. *First Options of*

---

[5] *See* footnote 4, *supra*.

*Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 1924, 131 L. Ed. 2d 985 (1995); *Dixon v. Daymar Colleges Group, LLC*, 483 S.W.3d 332, 341 n.23 (Ky. 2015). An appellate court reviews *de novo* the circuit court's application of rules governing the validity of an arbitration contract, but the court's factual findings, if any, will be disturbed only if clearly erroneous. *Conseco Finance Servicing Corp. v. Wilder*, 47 S.W.3d 335, 340 (Ky. App. 2001).

## ANALYSIS

For good reason, the circuit court hoped for guidance from our appellate courts before ruling, and *Wright I* seemed near providing it. The circuit court's and the parties' wait, as it turned out, proved a waste of time. Still, the circuit court's order cites *Wright I* as do both briefs.

We want to be perfectly clear that nothing distinguishes *Wright I* from any other unpublished opinion. No one now should read anything into the fact that this Court deemed it worthy of publication. Nor should significance be ascribed either to *Wright I*'s "depublication" in accordance with CR 76.28(4)(a), or the Supreme Court's refraining from ordering *Wright I* published when it dismissed the appeal after the parties settled.

There is an important rule that "denial of a motion for discretionary review by the Supreme Court or by the Court of Appeals shall not be taken as indicating its approval of the opinion or order sought to be reviewed, and shall not

be cited as connoting such approval." SCR[6] 1.030(8)(b). There is no logical or other reason to withhold applying the spirit of that rule to each procedural step that eventually resulted in the status of *Wright I* as unpublished. What is significant is its current status. It is an unpublished opinion.[7]

We thus proceed with our analysis without binding precedent on this specific issue. However, just as this Court is bound by precedent when it exists, we strive for continuity in all our jurisprudence, published and unpublished. To do otherwise would invite criticism that, with unpublished opinions, "the same issue under similar facts can be decided in entirely different ways . . . ." *Goodlet v. Commonwealth*, 825 S.W.2d 290, 292 (Ky. App. 1992). Worse still would be a resurrection of the charge that the body of unpublished opinions is "a rug under which judges sweep whatever they wish never to see the light of day." *Id.*

Although our opinion is in harmony with *Wright I*, we are unaffected by it. We reach the same conclusion by following existing precedent relating to arbitration.

---

[6] Rules of the Supreme Court.

[7] We note that the popular computerized legal research database, Westlaw Edge, marks opinions of this Court with a red flag when the Supreme Court, either by rule or by order, renders the opinions unpublished. According to the database, a red flag indicates "Severe Negative Treatment." This is an editorial comment by the database's vendor. Attorneys and jurists should attribute no significance to it and treat the case no differently than if it had been designated by this Court as unpublished when originally rendered.

The outcome here is directed by arbitration jurisprudence clarified in *Kindred Nursing Centers Ltd. Partnership v. Clark*, 137 S. Ct. 1421, 197 L. Ed. 2d 806 (2017). Generally, *Kindred* found the Kentucky rule of law limiting authority of attorneys-in-fact to bind their principals only to contracts other than arbitration agreements to be in violation of the supremacy of the Federal Arbitration Act (FAA). *Kindred* analogized principles articulated in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011), relating to real and hypothetical statutes and applied them to the grants of powers of attorney. *See Kindred*, 137 S. Ct. at 1426-27. In the instant case, we can apply those same principles more directly.

The law as expressed in *Kindred* is clear to this Court. Interpreting KRS 387.500, *et seq.*, in a way that allows a guardian authority to enter into contracts generally but denies that authority relative to an arbitration agreement is to create a rule violating the supremacy of the FAA, 9 U.S.C.[8] § 2.

> That statutory provision establishes an equal-treatment principle: A court may invalidate an arbitration agreement based on "generally applicable contract defenses" like fraud or unconscionability, but not on legal rules that "apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011). The FAA thus preempts any state rule discriminating on its face against arbitration—for example, a "law prohibit[ing] outright the

---

[8] United States Code.

> arbitration of a particular type of claim." *Id.*, at 341, 131 S. Ct. 1740.

*Kindred*, 137 S. Ct. at 1426. Of course, Kentucky's guardian statutes do not, on their face, discriminate against arbitration. But that does not matter.

> The Act also displaces any rule that covertly accomplishes the same objective by disfavoring contracts that (oh so coincidentally) have the defining features of arbitration agreements. In *Concepcion*, for example, we described a hypothetical state law declaring unenforceable any contract that "disallow[ed] an ultimate disposition [of a dispute] by a jury." *Id.*, at 342, 131 S. Ct. 1740. Such a law might avoid referring to arbitration by name; but still, we explained, it would "rely on the uniqueness of an agreement to arbitrate as [its] basis"—and thereby violate the FAA. *Id.*, at 341, 131 S. Ct. 1740 (quoting *Perry v. Thomas*, 482 U.S. 483, 493, n.9, 107 S. Ct. 2520, 96 L. Ed. 2d 426 (1987)).

*Id.*

When the Kentucky Supreme Court rendered the case *Kindred* reversed, *Extendicare Homes, Inc. v. Whisman*, 478 S.W.3d 306 (Ky. 2015), it held "that an attorney-in-fact did not have the authority to bind his principal to a pre-dispute arbitration agreement unless that authority was clearly stated in the power-of-attorney document. In *Kindred*, the Supreme Court dubbed this the 'clear statement rule[.]'" *Kindred Nursing Centers Limited Partnership v. Wellner*, 533 S.W.3d 189, 190-91 (Ky. 2017).

> The Kentucky Supreme Court's clear-statement rule, in just that way, fails to put arbitration agreements on an equal plane with other contracts. By the court's own

account, that rule (like the one *Concepcion* posited) serves to safeguard a person's "right to access the courts and to trial by jury." 478 S.W.3d, at 327; see *supra*, at 1425-1426. In ringing terms, the court affirmed the jury right's unsurpassed standing in the State Constitution: The framers, the court explained, recognized "that right and that right alone as a divine God-given right" when they made it "the *only* thing" that must be " 'held sacred' " and " 'inviolate.' " 478 S.W.3d, at 328-329 (quoting Ky. Const. § 7). So it was that the court required an explicit statement before an attorney-in-fact, even if possessing broad delegated powers, could relinquish that right on another's behalf. See 478 S.W.3d, at 331 ("We say only that an agent's authority to waive his principal's constitutional right to access the courts and to trial by jury must be clearly expressed by the principal"). And so it was that *the court did exactly what Concepcion barred: adopt a legal rule hinging on the primary characteristic of an arbitration agreement—namely, a waiver of the right to go to court and receive a jury trial*. See 563 U.S., at 341-342, 131 S. Ct. 1740; see also 478 S.W.3d, at 353 (Abramson, J., dissenting) (noting that the jury-trial right at the core of "the majority's new rule" is "the one right that just happens to be correlative to the right to arbitrate" (emphasis deleted)). Such a rule is too tailor-made to arbitration agreements—subjecting them, by virtue of their defining trait, to uncommon barriers—to survive the FAA's edict against singling out those contracts for disfavored treatment.

*Kindred*, 137 S. Ct. at 1426-27 (emphasis added) (footnote omitted).

The circuit court did what *Kindred* prohibits. It adopted "a legal rule hinging on the primary characteristic of an arbitration agreement—namely, a waiver of the right to go to court and receive a jury trial." *Id.* at 1427. We must reject that rule. We cannot interpret KRS 387.500, *et seq*., as did the circuit court

because it is "too tailor-made to arbitration agreements . . . singling out those contracts for disfavored treatment." *Id.* (footnote omitted).

Nor do we believe this was the legislature's intent. The legislation very clearly recognizes and presumes an adjudication of total disability involves "the attendant deprivation of civil and legal rights that such a determination requires." KRS 387.500(2).

We note a broader question that is not before the Court – whether a guardian may validly agree, generally, with a residential care facility for the care of his ward. The complaint is not based on a breach of contract. However, the negligence claim alleges breaches of duty owed by Cambridge. Those duties arose because of the existence of a contract.

Because neither party argues that such general authority is lacking, we will only note that the statutes governing guardianship for disabled persons, KRS 387.500, *et seq.*, are "remedial rather than exclusive. These statutes intend to provide services for incompetent persons not only as specifically articulated but also as reasonably inferable from the nature of the powers of a guardian, which include in KRS 387.660[.]" *DeGrella By and Through Parrent v. Elston*, 858 S.W.2d 698, 704 (Ky. 1993). Consistent with that view is the idea that "[t]he scope of authority . . . of a guardian is much broader than that of a traditional

power of attorney, even one intended to survive disability." *Rice v. Floyd*, 768 S.W.2d 57, 59 (Ky. 1989).

The authority to enter into contracts generally is within the ambit of what is reasonably inferable from the statutes. That being so, we cannot interpret a statute to create, in effect, a rule that "covertly accomplishes" the objective of disfavoring arbitration agreements. *Kindred*, 137 S. Ct. at 1426.

## CONCLUSION

For the foregoing reasons, we reverse the Fayette Circuit Court's order and remand with instructions that the circuit court order the parties to arbitration in accordance with KRS 417.060(1).

KRAMER, JUDGE, CONCURS.

TAYLOR, JUDGE, CONCURS AND WRITES SEPARATE OPINION.

TAYLOR, JUDGE, CONCURRING: Respectfully, I concur with the majority but note that had this been a wrongful death action rather than a medical negligence case, the ruling of this Court would likely be different. *See Preferred Care Partners Mgmt. Group, L.P. v. Alexander*, 530 S.W.3d 919 (Ky. App. 2017).

BRIEFS FOR APPELLANTS:      BRIEF FOR APPELLEE:

Rebecca R. Schafer         Lisa E. Circeo
Paul A. Dzenitis            Hannah R. Jamison
Emily W. Newman         Megan L. Adkins
Louisville, Kentucky        Lexington, Kentucky